**Opinion issued August 4, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00287-CR

_____

**DEXTER LAFAYETTE TRIPLETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CR-1297**

---

## MEMORANDUM OPINION

A jury found appellant Dexter Lafayette Triplett guilty of the first-degree

felony offense of aggravated robbery, and it assessed his punishment at ninety-nine

years' imprisonment and a $10,000 fine. *See* TEX. PENAL CODE §§ 29.03(a), (b),

12.32, 12.42(c). In a single issue with three subparts, Triplett contends that his counsel provided ineffective assistance by not objecting to: (1) admission of extraneous offense evidence during the punishment phase of trial; (2) a comment by the prosecutor about Triplett's failure to testify made during the State's closing argument in the guilt-innocence phase of trial; and (3) a witness's testimony about Triplett's post-arrest silence during the punishment phase of trial. We affirm.

### Background

Two men wearing black clothing and face masks robbed the One Stop liquor store in Friendswood on April 10, 2017. One of the robbers was tall and carried a long rifle.[1] The other robber—later identified as Triplett—was short. They entered the store in the evening just before it closed. After entering the front door, the tall robber immediately jumped over a counter and began trying to get into the cash registers. But he quickly turned his attention to the front door, where he went and stood guard to prevent anyone from entering.

Triplett, meanwhile, chased after Charlie Lam, One Stop's owner and sole employee. Lam was restocking shelves in the back of the store before it closed, and he was the only person in the store at the time. Lam tried to run away from Triplett, but Triplett chased him down and pushed him to the floor, grabbed him by his shirt,

---

[1]     The record on appeal does not clearly identify the tall robber.

and dragged him across the store to the two cash registers. Lam lost his shirt as Triplett dragged him, but he was able to push a panic button.

Lam opened one register for Triplett immediately, but he took longer opening the second register, which was turned off. While waiting for the second cash register to turn on, Triplett grabbed a liquor bottle from the counter and hit Lam several times over the head with it. Triplett also kicked Lam repeatedly.[2] With blood pouring down his face, Lam kept his attention on opening the registers. He finally succeeded, and Triplett stole $200, a few bottles of liquor, and a pack of cigarettes. All of this was recorded on One Stop's sixteen surveillance cameras, and video recordings of the incident from various viewpoints inside and outside the store were introduced at trial.

At the time of the robbery, Kathryn Cruz was coincidentally driving by One Stop when she saw a spider on the inside windshield of her car. She pulled into the One Stop parking lot to get rid of it. After she parked her car, she noticed another customer walk towards the front door of One Stop, stop before entering, hold his hands up, and walk backwards away from the door. One of the robbers walked out of the store wearing all black and a ski mask and carrying a rifle, and Cruz saw him walk to the side of the building towards a small, silver colored sedan and disappear.

---

[2] Lam was later taken to the hospital, where doctors put seven staples in his head to treat his injuries.

Cruz drove out of the parking lot but quickly returned. She saw the silver car exit the parking lot. She did not see the second robber emerge from the store. She called 911 and went into the store where she found Lam.

Jasmine Mullins also stopped at One Stop during the robbery. As she walked to the front door, she saw someone hitting Lam with a liquor bottle. The person was wearing black clothing with a green-and-white sleeve. Before she could enter the store, the tall robber with the rifle stopped her. Like the male customer Cruz saw try to enter the store, Mullins put her hands up and backed away from the door. She walked past her car and towards Brandywyne, a street adjacent to One Stop. She explained that a main street runs in front of One Stop, and Brandywyne runs from the main street into a neighborhood behind the store. The first street to the right on Brandywyne is Huntington.

Mullins stopped on Brandywyne, but she turned and began walking back to her car when she saw the second robber, Triplett, exit. He had two liquor bottles in his hands, and Mullins thought he was looking for something, like the getaway car. Triplett walked past Mullins on Brandywyne towards the neighborhood, and he told her that she "better not call the cops." Mullins returned to her car and left. She coincidentally passed by a police officer, stopped the officer, and reported the robbery.

4

Numerous law enforcement officers arrived at One Stop in response to the aggravated robbery report. Officers set up a perimeter around the neighborhood and began searching for the robbers. Within half an hour, Lieutenant Matthew Wise saw someone standing in a dimly lit grassy area between a driveway and a house in the neighborhood near One Stop. Wise called the person over to his police car, and the person complied. The person was Triplett.[3] He wore shorts and a white tank top. Triplett told Wise that he had just left the hospital and was looking for his girlfriend's house. Wise noticed blood on Triplett's tank top, which Triplett lifted up showing a back brace he was wearing. Triplett also had a hospital band on his wrist.[4] Wise was suspicious, however, because Triplett appeared lost and unfamiliar with the area, and he did not know his girlfriend's address. So Wise arrested Triplett but did not initially charge him for the One Stop robbery.

Officers also recovered a video recording from a security camera during their search of the neighborhood. The house at the corner of Brandywyne and Huntington streets, just behind the One Stop, briefly recorded Triplett walking through the front yard as he turned right onto Huntington after leaving One Stop. A K-9 unit recovered

---

[3]    Police also found two other people of interest during a traffic stop, although it is not clear on the record before us whether either of these people were involved in the One Stop robbery.

[4]    The record on appeal does not indicate whether any information on the hospital bracelet supported Triplett's story about having just left the hospital.

a bundle of clothes next to the second house on Huntington, next door to the house with the security cameras. The bundle contained two hoodies, two liquor bottles, a flask, two pairs of gloves, and a ski mask. One of the bottles and one of the hoodies had blood on it. At the third house on Huntington, the K-9 unit found sweatpants. Officers never recovered a firearm connected to the One Stop robbery.

Triplett consented to a request for his DNA. A laboratory test of his DNA profile revealed that it matched DNA found on the clothing, ski mask, and gloves found in the bundle at the house on Huntington. After investigating officers received the DNA results, Triplett was arrested and indicted for the first-degree felony offense of aggravated robbery for the One Stop robbery.

Triplett pleaded not guilty. At trial, Lam, Cruz, Mullins, Lieutenant Wise, and one of the detectives who investigated the One Stop robbery testified. The State also called the K-9 officer who searched the neighborhood behind One Stop, the officer who obtained the DNA sample from Triplett, the officer who photographed the crime scene and collected evidence, and two DNA analysts who analyzed Triplett's DNA samples. At the end of trial, the jury convicted Triplett of aggravated robbery.

During the punishment phase, the State called two witnesses. Galveston County Sheriff's Department Corporal Trevor Powell identified Triplett from his fingerprints previously obtained when Triplett was arrested for prior offenses. The

6

State then went through Triplett's lengthy criminal history in detail without objection from the defense.

The State then called Houston Police Department Sergeant David Gonzales. Gonzales had investigated two other liquor store robberies in Houston that were similar to the One Stop robbery and occurred around the same time. Gonzales testified that these robberies involved a tall robber with a rifle and a short robber, and the short robber used violence against the store clerk in at least one of the Houston robberies. When he eventually learned of the One Stop robbery in Friendswood, Gonzales teamed up with the detectives investigating the One Stop robbery in an attempt to solve the Houston robberies. Gonzales testified that after Triplett was arrested and in custody for the One Stop robbery, Gonzales and the One Stop detective tried to speak to Triplett, but he declined to do so. At the time of trial, police had not charged anyone for either of the two Houston liquor store robberies.

During the State's closing argument, the State emphasized the "three different liquor stores [Triplett had] knocked off that each time it gets more violent." Citing rampant crime in Harris County, the State asked the jury to sentence Triplett to life imprisonment to punish him not only for the One Stop robbery but also for the Houston robberies. Defense counsel did not object to this argument. During Triplett's closing argument, defense counsel reminded the jury that the State was required to prove the extraneous Houston robberies beyond a reasonable doubt.

7

Defense counsel requested that the jury sentence Triplett to fifteen years' imprisonment, the minimum sentence based on Triplett's plea of true to an enhancement paragraph. *See* TEX. PENAL CODE § 12.42(c).

The jury sentenced Triplett to ninety-nine years' imprisonment and a $10,000 fine. *See id.* §§ 29.03(a), (b), 12.32, 12.42(c). The trial court signed a judgment of conviction by jury and certified Triplett's right of appeal. *See* TEX. R. APP. P. 25.2(a)(2). Triplett did not file a motion for new trial. This appeal followed.

### Ineffective Assistance of Counsel

In a single issue with three sub-issues, Triplett argues that his trial counsel provided ineffective assistance by not objecting to: (1) two extraneous offenses admitted during the punishment phase of trial; (2) the prosecutor's comment about Triplett's failure to testify during the State's closing argument in the guilt-innocence phase of trial; and (3) witness testimony about Triplett's post-arrest silence during the punishment phase of trial.

### A.     Standard of Review and Governing Law

The Sixth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires "objectively reasonable representation," not "errorless

counsel." *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must prove both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second prong, an appellant must demonstrate prejudice, or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142; *see Donald v. State*, 543 S.W.3d 466, 487 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that claims of ineffective assistance during punishment phase of trial require defendant to "prove that there is a reasonable probability that, but for counsel's

error's, the sentencing jury would have reached a more favorable verdict") (quoting *Ex parte Rogers*, 369 S.W.3d 858, 862–63 (Tex. Crim. App. 2012)). A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

Our review of trial counsel's effectiveness is highly deferential. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). We "indulge a strong presumption" that counsel's performance fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that the challenged action might be considered "sound trial strategy." *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142 (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)).

In most cases, the record on direct appeal is undeveloped and thus inadequate to show that trial counsel was not effective.[5] *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *see Thompson*, 9 S.W.3d at 813 ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

## B. Admission of Extraneous Offenses During Punishment Phase

In his first sub-issue, Triplett argues that his trial counsel was ineffective for failing to object to admission of two unadjudicated extraneous offenses—namely, Triplett's participation in two Houston liquor store robberies—during the punishment phase of trial. He contends that the extraneous offenses were inadmissible under article 37.07 of the Code of Criminal Procedure because the State

---

[5]     Claims of ineffective assistance of counsel rejected on direct appeal for "lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

did not prove beyond a reasonable doubt that Triplett committed them. He also contends that the extraneous offenses were inadmissible under Rule of Evidence 403, and counsel should have requested a mistrial.

The State responds that Triplett does not show that the extraneous offenses were inadmissible or that his counsel should have objected to their admission. To the contrary, the State argues that the evidence was admissible under article 37.07, and substantial evidence supported the ninety-nine-year sentence. Finally, the State argues that there is no record evidence explaining defense counsel's reasons for not objecting to admission of the extraneous offenses.

Ordinarily, "an accused shall not be tried for some collateral crime or for being a criminal generally." *Porter v. State*, 623 S.W.2d 374, 385 (Tex. Crim. App. 1981). However, there are several exceptions to this general rule. *Id.* For example, during the punishment phase of trial, the State and the defendant may offer evidence "as to any matter the court deems relevant to sentencing," including the defendant's prior criminal record, the defendant's character, or an opinion regarding the defendant's character. TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). The parties may also offer

> any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

12

*Id.*; *see Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007) (stating that, during punishment phase, "extraneous offense evidence may be offered for *any* relevant purpose, including proof of the defendant's character or propensity" to commit offenses, if State can prove beyond reasonable doubt that defendant can be held criminally responsible for extraneous offense). Evidence is relevant if it is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). "In a non-capital felony punishment hearing, the jury has discretion to assess whatever punishment it sees fit, within the prescribed range." *Id.*

If a defendant does not object to the admission of challenged evidence at trial, then the defendant cannot prevail on a claim of ineffective assistance of counsel on appeal "unless the trial judge would have erred in overruling the objection." *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017). Moreover, even if the defendant establishes that the evidence is objectionable, "without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic design." *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000). During the punishment phase, evidence of "the circumstances of the offense itself" or "the defendant himself before or at the time of the offense" is admissible. *Sanders v. State*, 25 S.W.3d 854, 857 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) (quoting *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex. Crim. App. 1979)).

During the punishment phase of trial, the State called Sergeant Gonzales who investigated the two extraneous Houston liquor store robberies. Gonzales testified that these two liquor stores were robbed just days before the One Stop robbery.[6] He had viewed one of these robberies on the store's security cameras, and he believed that the modus operandi of the robbers in the One Stop robbery was similar to that in the two Houston robberies he was investigating.

Gonzales testified that all three robberies were similar because a similar getaway car was used during each robbery; the robbers wore similar clothes and face masks; there was a tall robber with a long rifle and a short robber; the short robber appeared to be wearing a back brace; and, in at least one of the extraneous robberies, the robber used violence against the store's employee. Gonzales emphasized the shorter robber's use of a handgun during the two Houston robberies, although no record evidence indicates that Triplett used a firearm during the One Stop robbery. Gonzales conceded that no one had been charged with either Houston robbery at the time of Triplett's trial for the One Stop robbery.

The State also introduced evidence of Triplett's prior convictions. His certified criminal history showed Triplett had been convicted of sixteen prior offenses, including theft, burglary of a habitation, and a prior aggravated robbery.

---

[6]     These two Houston liquor stores were robbed on March 20 and 24, 2017. One Stop was robbed on April 10, 2017.

Triplett also pleaded true to an enhancement paragraph relating to his burglary of a habitation conviction. Defense counsel did not object to the admission of any of this evidence.

During the State's closing argument, the State emphasized the two Houston robberies, imploring the jury to sentence Triplett not only for the One Stop robbery, but for the two Houston robberies as well:

> Your verdict says a lot. Not only is it going to punish [Triplett] for the vicious crimes that he's done not only to Charlie Lam, but to that poor old clerk in Harris County.[7] You're going to send a message to him, and you're going to send a message to the community on how we deal with these types of crimes.
>
> * * * *
>
> [Y]ou've heard testimony about the three different liquor stores he's knocked off that each time it gets more violent. He goes from just purse snatching in one store, slapping around a poor old guy just trying to make a living, and then viciously, brutally beating Charlie Lam.
>
> Ladies and gentlemen, we have to send this Defendant to prison for life because if we don't he's going to kill somebody.
>
> * * * *
>
> Crime is rampant in Harris County right now. And it's because of stuff like this.
>
> * * * *

---

[7]   On appeal, the State argues that the "jury did not sentence Triplett to confinement for 99 years because he was involved in the two Houston robberies." This argument is unsupported with any record citation. *See* TEX. R. APP. P. 38.1(i). It also contradicts the State's jury argument that Triplett should be punished not only for the One Stop robbery but also for what he did "to that poor old clerk in Harris County."

15

And I also want you to send another message to this Defendant. One of the biggest mistakes he made was crossing the Harris County line into Galveston County. Because maybe some of these other counties don't really care about violent criminals, but Galveston County does. So, send him a message, and send every other criminal in Harris County or Dallas County that wants to come into our County and do this kind of thing, you're going to prison for life.

In its rebuttal argument, the State argued that if police had not caught Triplett after the One Stop robbery, he would "still be out hitting up liquor stores here, Harris County, wherever he decides to go. And that's exactly what he's going to do if he ever gets out, if he's sentenced to prison and gets out." The State requested that the jury sentence Triplett to life in prison.

In Triplett's closing argument, defense counsel focused on the extraneous offenses. Counsel argued that the State was required to prove Triplett's involvement in the two Houston robberies beyond a reasonable doubt, which Triplett contended the State did not do. Counsel asked the jury to "discount those [extraneous] aggravated robberies because, one, Harris County never felt like they had enough evidence on those; and, two, I don't think they definitively linked [Triplett] to those crimes." Defense counsel asked the jury to punish Triplett only for the One Stop robbery, not for the extraneous Houston robberies. Counsel requested that the jury sentence Triplett to fifteen years' imprisonment, the minimum sentence based on the enhancement paragraph. *See* TEX. PENAL CODE § 12.42(c). The jury sentenced Triplett to ninety-nine years' imprisonment and a $10,000 fine.

16

Assuming without deciding that the extraneous offense evidence was objectionable, Triplett has not established on the record before us that his trial counsel was constitutionally deficient. *See Tong*, 25 S.W.3d at 714 (stating that even if evidence is objectionable, without some explanation as to why counsel did not object to admission of evidence, courts will presume failure to object was product of overall strategic design). The appellate record does not affirmatively demonstrate that defense counsel's performance was deficient. *See Lopez*, 343 S.W.3d at 142. Triplett did not file a motion for new trial or otherwise give his counsel an opportunity to explain why he did not object to admission of the extraneous offenses. *See Menefield*, 363 S.W.3d at 593. A strong presumption exists that counsel's performance fell within the wide range of reasonable professional assistance of counsel that might be considered part of overall strategy. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Tong*, 25 S.W.3d at 714. Triplett has not overcome this presumption.

We disagree with Triplett that no reasonable strategy explains defense counsel's failure to object to admission of the extraneous offense testimony. *See Strickland*, 466 U.S. at 689 (stating that appellant must overcome presumption that counsel's challenged action might be considered "sound trial strategy"). Article 37.07 favors broad admissibility of unadjudicated extraneous offenses during the punishment phase of trial, and it authorizes admission of extraneous offenses "for

*any* relevant purpose, including proof of the defendant's character or propensity . . . ." *Delgado*, 235 S.W.3d at 252; *see* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). The proof required to establish admissibility of an extraneous offense during the punishment phase differs from proof of guilt. To establish admissibility of an extraneous offense, the State need not "necessarily prove that the act was a criminal act or that the defendant committed a crime," but rather the State must only demonstrate the "defendant's involvement in the act itself, instead of the elements of a crime necessary for a finding of guilt." *Thompson v. State*, 425 S.W.3d 480, 491 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)).

Gonzales testified that the two extraneous Houston robberies he investigated were similar to the One Stop robbery because they shared a similar modus operandi, occurred within days of each other, and involved a tall robber and a short robber. Importantly, the short robber in all three robberies wore a back brace. We need not decide whether this evidence establishes Triplett's involvement in the extraneous robberies. But the evidence was arguably admissible, which is sufficient to conclude that defense counsel reasonably could have decided any objection would be overruled. *See Crocker v. State*, 441 S.W.3d 306, 315 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding that defense counsel was not ineffective where counsel could have concluded that objecting to admission of four extraneous

18

offenses would have been overruled and decided not to object). Counsel further could have decided that the better strategy would be to defend against the extraneous offenses in closing argument, which is precisely what defense counsel did. Without any explanation from counsel for the challenged actions, Triplett has not rebutted the strong presumption that counsel's actions fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

We overrule Triplett's first sub-issue.

## C.     State's Comment About Triplett's Failure to Testify

In his second sub-issue, Triplett contends that his defense counsel was ineffective for failing to object to the State's comment during its closing argument in the guilt-innocence phase about Triplett's failure to testify. Triplett specifically challenges the State's comment to the jury about the lack of evidence that the gun used in the One Stop robbery was a fake gun. Triplett argues that he was the only person at trial who could testify whether the gun was real, and therefore the comment was directed at his decision not to testify.

The State responds that the comment was proper because it anticipated Triplett's defense to the aggravated robbery charge on the ground that a real firearm was not used during the robbery; it was a summation of the evidence; and it was not "manifestly intended as a comment on the failure to testify." The State further argues

that no record evidence explains why defense counsel did not object to the comment, and counsel may have decided not to object so as not to emphasize the comment.

A comment on a criminal defendant's failure to testify violates the United States and Texas Constitutions and the Code of Criminal Procedure. U.S. CONST. amend V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 38.08; *see Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). To determine whether argument constitutes an improper comment about a defendant's failure to testify, "courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Randolph*, 353 S.W.3d at 891.

The implication of a failure to testify must be clear and necessary; an implied or indirect allusion to a failure to testify is not improper. *Id.* The test is "whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* To determine its character, the comment must be analyzed in the context in which it was made. *Id.* An "argument that points to a lack of evidence that only the defendant personally can supply violates the defendant's right against self-incrimination." *Brown v. State*, 92 S.W.3d 655, 665 (Tex. App.—Dallas 2002), *aff'd*, 122 S.W.3d 794 (Tex. Crim. App. 2003). If evidence in the record supports the remark, there is no error. *Randolph*, 353 S.W.3d at 893.

20

At the beginning of the State's closing argument, the State played the video of the One Stop robbery again for the jury. The State implored the jury to "think about Charlie Lam" and discussed Lam's work ethic before comparing him to Triplett, whom the State labeled "a danger to society if there ever was one." The State went through the facts of the robbery, including where Triplett was found afterwards, his excuse to police for being in the area, and the DNA and other evidence found in the neighborhood behind One Stop.

Then the State pivoted to firearms, arguing that even though there was no evidence that Triplett carried a firearm during the One Stop robbery, he was culpable for aggravated robbery based on the tall robber's use of a rifle during the robbery. The State argued:

> And let's talk about the firearm. I'm sure Defense counsel is going to get up here and say, "Well, we never recovered the firearm. So, how do we know it wasn't a fake gun?" You have not heard any evidence of that whatsoever.
>
> And if that's a fake gun, that's the realest fake gun I've ever seen. There was absolutely a firearm used during this aggravated robbery. He's a party to it. He not only aided it, he basically did it. He was the ringleader. He didn't basically do it. He did do it. He was the ringleader. And hold him accountable. If y'all find him guilty of a lesser included offense of robbery, you're letting him off. There's a reason it's called a lesser included. Don't fall for that. Please don't fall for that.

Defense counsel did not object to these comments. Instead, counsel responded to these remarks in closing argument by discussing the lack of evidence of the firearm used in the One Stop robbery. Counsel questioned why Triplett was charged

21

with aggravated robbery based on the use of a firearm rather than robbery. Counsel argued that police never recovered a firearm, and the State did not meet its burden to prove that a real firearm was used in the robbery. Defense counsel conceded that the "State has probably proven a robbery with [Triplett]" based on the powerful, "gold standard" DNA evidence. But counsel vehemently disputed that the State had proved Triplett was guilty of aggravated robbery.

In its rebuttal argument, the State responded why it had charged Triplett for the offense of aggravated robbery based on the use of a firearm during the One Stop robbery:

> I can tell you right now why a firearm was included in the indictment. We've heard a lot about the rum bottle, and we've seen how Charlie was beaten over the head with it. But as equally important to Charlie, he was not only beat in the head with a bottle, he had a gun stuck inches from his face that at any moment all it would take was the pull of a trigger and for his head to be blown off of his body. And for the Defense to get up here and argue that that's where his client drew the line, that him and his buddies got together ahead of time, and said, "No, no; I don't want to be too violent; let's take a fake gun"; but then he has no problem walking into that liquor store, putting on his glove and striking Charlie Lam with that bottle, and then turning around and leaving and coming back and kicking him, and this fake gun, that's where he [drew] the line? That's his moral compass? That's ridiculous. That is not a reasonable doubt. That's just dumb.

The jury returned a verdict of guilty for the offense of aggravated robbery.

As with his first sub-issue, the record before us does not affirmatively demonstrate that Triplett's trial counsel was constitutionally deficient for not objecting to these comments about the lack of evidence of a fake gun by the State.

22

*See Lopez*, 343 S.W.3d at 142. From the jury's standpoint, the comment about a lack of evidence is attenuated from any clear and necessary implication of Triplett's failure to testify. *See Randolph*, 353 S.W.3d at 891. We need not decide whether the comment was improper, however, because defense counsel could have concluded that any objection to the comment would be overruled and would serve only to amplify Triplett's decision not to testify. *See Crocker*, 441 S.W.3d at 315. On the record before us, we conclude that Triplett has not established his counsel was ineffective for failing to object to the State's comments concerning the lack of evidence that the robbers used a fake firearm in the One Stop robbery.

We overrule Triplett's second sub-issue.

## D. Witness Testimony about Triplett's Post-Arrest Silence

In his third sub-issue, Triplett contends that his counsel was ineffective for failing to object to and request an instruction to disregard Gonzales's testimony during the punishment phase about Triplett's refusal to speak to police after he was arrested for the One Stop robbery. Triplett argues that this violated his Fifth Amendment right to remain silent during police interrogation. The State responds that no record evidence shows counsel's strategy for not objecting. The State further argues that Triplett did not prove that he was prejudiced by his counsel's failure to object because significant evidence supported his sentence.

A defendant's right against self-incrimination arises when the defendant is arrested, and therefore a defendant's post-arrest silence is an exercise of this right under both the United States and Texas Constitutions. *Sanchez v. State*, 707 S.W.2d 575, 580 (Tex. Crim. App. 1986); *see Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (stating that Fifth Amendment of United States Constitution protects post-arrest silence after *Miranda* warnings given, but article I, section 10 of Texas Constitution more broadly protects defendant's right to post-arrest silence before such warnings given). Consequently, the State violates a defendant's right against self-incrimination by commenting on the defendant's post-arrest silence. *Sanchez*, 707 S.W.2d at 580; *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (stating that comment on defendant's post-arrest silence is akin to comment on failure to testify at trial because it attempts to raise inference of guilt from defendant's invocation of constitutional right).

As discussed above, the State called Sergeant Gonzales as a witness during the punishment phase. The State asked Gonzales a series of questions about the timeline of his investigation of the two extraneous Houston robberies. The State then asked Gonzales what he did after he learned that Triplett's DNA matched DNA on evidence recovered in the neighborhood behind One Stop after the One Stop robbery. Gonzales responded:

> We learned that [Triplett] was in custody for an unrelated charge. I believe he [an unidentified person] proceeded to try to talk to [Triplett], in which he declined. I'm not a hundred percent sure on that. You would have to ask him.

Defense counsel did not object. As stated above, the jury sentenced Triplett to ninety-nine years' imprisonment and a $10,000 fine.

Assuming without deciding that Gonzales's testimony about Triplett's post-arrest silence violated his right against self-incrimination, the record before us does not affirmatively demonstrate that counsel's representation was constitutionally deficient. *See Lopez*, 343 S.W.3d at 142. Gonzales's testimony implies that Triplett declined to speak to the detective investigating the One Stop robbery about that robbery, but Gonzales equivocated and conceded that he did not know whether Triplett declined to speak to police. The State then steered Gonzales to the next stages of his investigation without dwelling on Triplett's post-arrest silence. In this context, defense counsel could have determined that the jury understood Gonzales lacked personal knowledge about whether Triplett was silent after he was arrested. Counsel could have also determined that an objection would emphasize the testimony, thereby causing more harm than the equivocal testimony had caused.

Without an explanation from counsel regarding his decision not to object to this testimony, we presume that not objecting was part of an overall strategic design. *See Tong*, 25 S.W.3d at 714. We therefore conclude that the record before us does

not affirmatively demonstrate that defense counsel was constitutionally deficient.
*See Menefield*, 363 S.W.3d at 593; *Lopez*, 343 S.W.3d at 142.

We overrule Triplett's third sub-issue.

## Conclusion

We affirm the trial court's judgment of conviction and sentence.

April L. Farris
Justice

Panel consists of Justices Landau, Guerra, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).