**Opinion issued January 24, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00095-CR

———————————

**FRABON CROCKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1012896**

---

## O P I N I O N

Frabon Crocker was convicted of aggravated robbery. This Court reversed, and Crocker waived a jury trial on remand. The trial court found him guilty and sentenced him to forty-five years in prison. In this appeal, Crocker contends that his right to a speedy trial was violated, that the State engaged in vindictive

prosecution and the trial judge in vindictive sentencing, and that his trial counsel rendered ineffective assistance of counsel. We affirm.

## Background

On the morning of January 26, 2004, Seyed Tabatabi was working alone in the back office of his flower shop. He heard a sound from the cash register and returned to the front of the store. Tabatabi saw a man with his hand in the cash register. When the man turned and ran, Tabatabi followed him into the parking lot. The man turned and pointed a gun at Tabatabi. The man then got into a red van and drove off. Tabatabi was able to record the van's license plate and reported the robbery to the police. He gave the police the van's license plate number and a general description of the robber. He also informed police that the man stole approximately $700.

About ten days after the robbery, Tabatabi was shown a photo lineup. He identified Crocker as the robber, but said he was only ninety percent sure. Approximately four months after the robbery, an officer on patrol ran the plates to a red van he had stopped for failing to signal a lane change and learned the vehicle was wanted. When the officer ran a check on Crocker, he learned there was an outstanding warrant for Crocker's arrest. After Crocker's arrest, the police conducted a video lineup, which was shown to Tabatabi. He again identified Crocker and this time was 100 percent sure.

2

At Crocker's original trial for this offense, a jury found him guilty and assessed his punishment at thirty-five years' imprisonment. Crocker appealed, and this Court, holding that the State had impermissibly commented on Crocker's failure to testify, reversed and remanded for a new trial. *See Crocker v. State*, 248 S.W.3d 299, 307 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The mandate issued on April 23, 2008. Almost two-and-a-half years later, the trial court appointed Crocker new counsel and set the case for trial. After some resets, Crocker's second trial was set for January 2011. Crocker waived the right to a jury trial, and the trial court—presided over by a visiting judge, and not the same judge who had presided over Crocker's first trial—found him guilty. At the punishment stage, the State introduced four prior convictions that it had not offered during the first trial. The trial court sentenced Crocker to forty-five years in prison, which was ten years longer than the punishment that the jury had assessed in his first trial.

**Speedy Trial**

In first issue, Crocker contends that the excessive delay in re-trying his case violated his right to a speedy trial under both the United States and Texas constitutions. We analyze constitutional speedy trial claims on an ad hoc basis by weighing and balancing four factors enumerated in *Barker v. Wingo*: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice

3

as a result of the delay. *Cantu v. State*, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972)); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id*. Thus, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

The *Barker* analysis is triggered by a delay unreasonable enough to be considered "presumptively prejudicial." *Id.* at 281 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686 (1992)). There is no set time period that triggers the analysis. *Id*. Once the analysis is triggered, we first weigh the strength of each factor and then balance the weight of the factors "in light of the conduct of both the prosecution and the defendant." *Id*. All of the factors must be considered together along with any other relevant circumstances. *Id.* "No one factor possesses 'talismanic qualities,' thus courts must 'engage in a difficult and sensitive balancing process' in each individual case." *Zamorano*, 84 S.W.3d at 648 9quoting *Barker*, 407 U.S. at 537, 92 S. Ct. 2182); *see also Cantu*, 253 S.W.3d

4

at 280 (stating each of the *Barker* factors must be weighed and balanced "on an ad hoc basis").

We dismiss the charging instrument with prejudice only upon finding that the defendant's speedy trial right was "actually violated." *Cantu*, 253 S.W.3d at 281. We "must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.*

Generally, to preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient particularity to make the trial court aware of the complaint, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1)(A), (a)(2). The Court of Criminal Appeals has held that a defendant fails to preserve a speedy trial claim for appellate review when he does not raise this claim before the trial court and, instead, raises the argument for the first time on appeal. *Mulder v. State*, 707 S.W.2d 908, 915 (Tex. Crim. App. 1986) ("The record does not reflect that Claude raised a speedy trial claim in cause no. 22,843, and, as that cause is the case before us we find that no issue is presented because no motion to dismiss [the indictment] was made by Claude in the instant case."); *see also Dunn v. State,* 819 S.W.2d 510, 526 (Tex. Crim. App. 1991) (holding because defendant raised statutory speedy trial claim before the trial

5

court, but not constitutional speedy trial claim, and speedy trial statute was subsequently declared unconstitutional, defendant's constitutional speedy trial claim was not preserved for appellate review).

Intermediate courts of appeal, including this one, likewise have held a speedy trial complaint waived—and declined to address the *Barker* factors—where the speedy trial issue was not timely preserved in the trial court. Most recently, in *Henson v. State*, No. 01-11-00225-CR, 2012 WL 3042303, at *8 (Tex. App.—Houston [1st Dist.], July 26, 2012, pet. filed), a panel of this court held that, where the record contained no motion for speedy trial or to dismiss, and there was no indication that the appellant ever argued before the trial court that he was being denied his right to a speedy trial, appellant's speedy trial claim was not preserved for review. That case relied on *Guevara v. State*, 985 S.W.2d 590 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd), which we also find instructive here. Guevara filed a pro se motion requesting a speedy trial, but the motion was never presented to the trial court nor adopted or raised by Guevara's counsel. *Guevara*, 985 S.W.2d at 592. Guevara was subsequently reindicted under a different cause number, and no speedy trial motion or objection was made in the new cause number. *Id.* The Fourteenth Court held Guevara waived his speedy trial complaint, noting "[a] motion must be 'presented' to the trial court to preserve a complaint for appellate review, and presentment means more than mere filing." *Id.*

"The movant must make the trial judge aware of the motion by calling the judge's attention to it in open court *and requesting a ruling thereon.*" *Id.* (emphasis added); *see also Haynes v. State*, No. 05-03-01092-CR, 2004 WL 1173403, at *3 (Tex. App.—Dallas May 27, 2004, no pet.) (not designated for publication) (stating "appellant must raise a speedy trial claim and obtain a ruling at trial in order to preserve the issue for appeal" and holding appellant waived speedy trial complaint despite filing a pro se letter requesting that the trial judge "look into" why he had not been arraigned and why bond had not been set).

Here, the record shows that more than two years elapsed between the time this court's mandate issued on April 23, 2008 and the time the trial court appointed Crocker new counsel and set the case for trial.[1] The record also shows that, once Crocker was appointed counsel in September 2010, the trial court set a prompt trial date—November 2010. Crocker then agreed to reset the November 2010 trial date, and the trial ultimately took place in January 2011. The record contains no motion for speedy trial or motion to dismiss the indictment for lack of a speedy trial. The closest thing in the record to an assertion by Crocker to a right to a speedy trial is his October 2009 pro se letter to the district clerk inquiring about certain filings.

---

[1] Crocker does not assert that that the time period before this court's issuance of the mandate on April 23, 2008 should be considered in the speedy trial analysis. Rather, he contends his speedy trial right was violated because of the delay between the time this court reversed his conviction and returned the case to the trial court and the time of his re-trial.

7

This letter ended with a reminder that his conviction had been reversed and asked, "When could I expect to be brought back in this court for a new trial?" Even if we were to construe this letter as an assertion of his right to a speedy trial, Crocker never presented it to the trial court and never obtained a ruling. We therefore conclude that Crocker failed to preserve his speedy trial complaint for appellate review. *See Newcomb v. State*, 547 S.W.2d 37, 38 (Tex. Crim. App. 1977) (noting difficulty inherent in considering speedy trial issue on incomplete record, because *Barker* balancing test by its nature "requires a full development of the facts"); *Mulder*, 707 S.W.2d at 915; *Dunn*, 819 S.W.2d at 526; *Henson*, 2012 WL 3042303, at *8 (speedy trial claim was not preserved where there was no indication that appellant ever argued before trial court that he was being denied his right to speedy trial); *Guevara*, 985 S.W.2d at 592–93 (to preserve speedy trial complaint, movant must make trial judge aware of motion by calling judge's attention to it and requesting ruling thereon).

We overrule Crocker's first issue.

### Vindictive Prosecution and Sentencing

In his second issue, Crocker contends that he was subject to vindictive prosecution and vindictive sentencing. Specifically, he argues that, because he successfully prosecuted an appeal from the first conviction in this case, the State introduced additional convictions to enhance his sentence that were available to,

but not offered by, the State in the first trial. He also asserts that the fact that his sentence in the second trial was ten years longer than his sentence in the first trial shows that the trial court punished him for prosecuting his appeal.

An appellant generally waives claims of judicial and prosecutorial vindictiveness by failing to object at trial. *See Neal v. State*, 150 S.W.3d 169, 180 (Tex. Crim. App. 2004) ("Because appellant never presented his prosecutorial vindictiveness claim in the trial court, he failed to preserve this issue for appellate review."); *see also Harris v. State*, 364 S.W.3d 328, 336–37 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (defendant failed to preserve judicial vindictiveness claim because he did not object to sentence or otherwise raise claim of judicial vindictiveness in trial court); *Fleck v. State*, No. 01-09-00983-CR, 2011 WL 1632168, at *4 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Neal* and finding prosecutorial vindictiveness claim not preserved when counsel did not present complaint to trial court); *Roberts v. State*, No. 01-03-00311-CR, 2004 WL 2612413, at *3 (Tex. App.—Houston [1st Dist.] Nov. 18, 2004, pet. ref'd) (mem. op., not designated for publication) (complaint of judicial vindictiveness not preserved when not raised in trial court). Crocker did not raise the issues of prosecutorial or judicial vindictiveness in the trial court. Accordingly, we conclude that Crocker has not preserved these arguments for appellate review.

9

We overrule Crocker's second issue.

**Ineffective Assistance of Counsel**

In his third issue, Crocker contends that his trial counsel rendered ineffective assistance. Crocker identifies three specific omissions: (1) failure to move for dismissal on speedy trial grounds, (2) failure to move to suppress Tabatabi's identification in the second lineup and in court, and (3) failure to object on vindictive prosecution grounds to the State's use of extraneous offenses that had not been offered in Crocker's first trial.

**A. Standard of Review and Applicable Law**

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mitchell*, 68 S.W.3d at 642. A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Ineffective assistance of counsel claims "must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). The record must affirmatively demonstrate the alleged ineffectiveness. *Id.* A "defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Id.* at 836. Generally, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that his conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833; *see also Rylander*, 101 S.W.3d at 110–11. We cannot speculate beyond the record provided; rather, a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client. *See Bone*, 77 S.W.3d at 833. "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State,* 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

11

**B.     Failure to File Motion to Dismiss**

Crocker contends that his trial counsel was ineffective for failing to file a motion to dismiss on speedy trial grounds.  While the record is silent regarding trial counsel's reasons for not filing such a motion, we note that the record demonstrates that Crocker's trial counsel agreed to reschedule the trial setting.  Thus, it is possible trial counsel may have wanted or needed more time to prepare for trial.  *See Walker v. State*, 201 S.W.3d 841, 850 (Tex. App.—Waco 2006, pet. ref'd) (noting possible reason for not asserting speedy trial violation is for counsel to have more time to investigate and prepare for trial).  We therefore must presume counsel had a valid strategic reason for defending the case as he did and conclude that, with respect to the speedy trial issue, Crocker has not overcome the presumption that counsel's representation was reasonable and professional.  *See Bone*, 77 S.W.3d at 833; *see also Dean v. State*, No. 12-03-00074-CR, 2004 WL 1486154, at *6 (Tex. App.—Tyler June 30, 2004, pet. ref'd) (mem. op., not designated for publication) (holding that ineffective assistance claim based on failure to raise speedy trial violation must fail where record was silent concerning counsel's strategy); *Alvarez v. State*, No. 05-00-01043-CR, 2002 WL 14210, at *5 (Tex. App.—Dallas Jan. 7, 2002, no pet.) (not designated for publication) (same); *Belle v. State*, No. 14-97-00915-CR, 2000 WL 424004, at *4 (Tex. App.—Houston

12

[14th Dist.] Apr. 20, 2000, no pet.) (not designated for publication) (same); *Jaile v. State*, 836 S.W.2d 680, 686 (Tex. App.—El Paso 1992, no pet.) (same).

## C. Failure to Move to Suppress Lineup and In-court Identification

Crocker also asserts that his trial counsel rendered ineffective assistance by failing to move to suppress Tabatabi's in-court identification and identification during the second lineup, which he contends were impermissibly suggestive. When the record is silent about why counsel chose not to move to suppress a witness's identification, an appellant cannot meet the first prong of the *Strickland* test. *Greene v. State*, 124 S.W.3d 789, 791–92 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Bone*, 77 S.W.3d at 830); *see also Davis v. State*, 930 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (same). Additionally, on this record, we cannot conclude that Crocker has shown prejudice from trial counsel's failure to object to Tabatabi's identification in the second lineup and in court. Even if counsel had objected, and the trial court had sustained the objection, Tabatabi could still testify about what he saw during the robbery— such as the physical description of the robber and the description of the van and its license plate number—as well as the identification of Crocker in the first lineup, which Crocker does not challenge as being impermissibly suggestive. *See Greene*, 124 S.W.3d at 792. This evidence would provide a sufficient basis for the factfinder to conclude Crocker was the robber, and, therefore, supports the

13

conclusion that Crocker was not prejudiced. *See id.* at 792–93 (finding prejudice portion of *Strickland* not met where, even if in-court identification suppressed, following evidence remained: appellant's voice identified making threats on voice mail, woman generally matching appellant's description fled crime scene, and person seen fleeing scene was in Taurus and evidence showed appellant rented Taurus day of the offense).

## D.    Failure to Object to Additional Extraneous Offense Evidence

Finally, Crocker argues that trial counsel rendered ineffective assistance by failing to object to the State's proffer of four additional extraneous offenses during the punishment stage of the trial and, instead, affirmatively stipulating their admissibility. Crocker contends there is no plausible strategy that could excuse this failure to object. Specifically, Crocker contends that, under the doctrine of prosecutorial vindictiveness, the additional extraneous offenses were inadmissible.

While there is a presumption against admissibility in certain circumstances, *see Neal*, 150 S.W.3d at 173–74 (noting presumption applies if defendant proves "that he was convicted, he appealed and obtained a new trial, and that the State thereafter filed a greater charge or additional enhancements"), that presumption can be overcome by evidence that the State offered the evidence for a reason unrelated to the appellant's exercise of his legal right to appeal. *Hood v. State*, 185 S.W.3d 445, 448 (Tex. Crim. App. 2006). For example, the evidence could be

14

admissible if the State did not offer it during the first trial due to "mistake or oversight." *Id.* at 450.

Because the evidence is not necessarily inadmissible, Crocker's argument that there is no plausible reason not to object is incorrect. Trial counsel could have reached the conclusion that an objection would have been overruled and decided not to object on that basis. *See Williams v. State*, No. 01-09-00673-CR, 2010 WL 4910243, at *5 (Tex. App.—Houston [1st Dist.] Dec. 2, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) ("It is a valid trial strategy not to object if objection would have been futile."). Because the record is silent concerning counsel's reasons for not objecting, we must presume counsel had a valid strategy. *See Bone*, 77 S.W.3d at 833; *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding ineffective assistance not shown where record was silent concerning trial counsel's failure to object to the State's persistent attempts to elicit inadmissible hearsay testimony).

We overrule Crocker's third issue.

## Conclusion

We affirm the judgment of the trial court.


                                        Rebeca Huddle
                                        Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Justice Sharp, dissenting.  Dissent to follow.

Publish.   TEX. R. APP. P. 47.2(b).