# NO. 12-23-00123-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON ASHLEY BACON,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Brandon Ashley Bacon, appeals his conviction for assault of a family member by impeding breath or circulation. In three issues, he challenges the trial court's refusal to instruct the jury on a lesser included offense, contests the sufficiency of the evidence, and alleges a violation of his right to a speedy trial. We affirm.

## BACKGROUND

On the night of February 2, 2022, Officers James Nipp, Luiz Avelar, and Sebastian Torres of the Tyler Police Department responded to a call for service related to an assault or family disturbance at Appellant's residence in Tyler, Texas. At the residence, they encountered Appellant, D.W.B., his wife, and D.B., their teenaged son. Police separated the individuals and interviewed all three about the events that prompted the call to law enforcement. D.W.B., who appeared upset and distraught, stated that Appellant arrived home and was angry because she did not fill the car's gas tank that day, so the two began arguing in their bedroom. While she sat on the bed, he pushed her down by her throat, pinned her to the bed, and increased the pressure on

her neck until she could no longer breathe, so she struck Appellant to make him stop. She further stated that during the altercation, one of her gold teeth was knocked out, and a corner of the bed broke. Nipp and Avelar confirmed that the bed in the room was broken, and all three police officers noticed red marks, resembling finger marks, on one side of D.W.B.'s neck. Torres photographed D.W.B.'s injuries at the scene. After speaking to the other two individuals at the home, Nipp again spoke to D.W.B., warned her that making a false report to a police officer is a criminal offense, and afforded her an opportunity to change any portion of what she related about the assault, which she declined. D.W.B. was unclear about whether she wished to pursue charges against Appellant and changed her mind multiple times. Ultimately, Appellant was arrested that night, but made bond the following day and was released from custody.

Appellant was indicted for the assault of a family member by impeding breath or circulation on August 18, 2022, and was rearrested on October 13. Appellant pleaded "not guilty" to the charged offense. Although Appellant was represented by counsel, on March 22, 2023, he filed a motion for speedy trial *pro se*.[1] The trial court did not rule on or otherwise acknowledge the motion. Trial commenced on May 1.

At trial, Officers Nipp, Avelar, and Torres each testified about the events of February 2, 2022, and their respective roles in the investigation, particularly regarding what D.W.B. related to them about Appellant assaulting and choking her. The State introduced footage from Nipp's and Avelar's body cameras showing D.W.B.'s statements to the police, as well as Torres's photos of D.W.B.'s injuries.

D.W.B.'s trial testimony differed significantly from her statements to law enforcement on February 2. She testified to telling police Appellant choked her that night, but then testified that he did not choke her. She told the officers that Appellant choked her because she "wanted him to get in trouble," but both she and Appellant physically fought with each other that night. D.W.B. testified that Appellant questioned her about fueling the car, but she started the argument by "getting in [Appellant's] face." During the argument, Appellant stated his intent to leave and began packing his belongings, with D.W.B. attempting to physically obstruct him from doing so. She and Appellant then "started pushing each other back and forth." When Appellant went outside to load his possessions into his car, D.W.B. followed, at which point they "started

---

[1] On April 3 and 6, Appellant also filed *pro se* motions to dismiss based on different sections of the Texas Code of Criminal Procedure.

tussling and fell on the ground… fighting and hitting each other," during which she assumed her gold tooth fell out. D.W.B. then called out to D.B. for assistance. D.B. came outside and "got [Appellant] off of [her]" by hitting him. Thereafter, D.W.B. called the police. Prior to trial, D.W.B. submitted an affidavit of non-prosecution in an attempt to stop the proceedings and show "another side of [Appellant]." She could not recall whether Appellant asked her to complete the affidavit.

D.B., Appellant's and D.W.B.'s son, testified that he was inside the house on February 2 and heard his parents verbally arguing, but did not remember the topic of the argument. D.W.B. called him into the bedroom and asked him to "get your dad and get him out of here," but his parents were not near each other at that time. D.B. told them that they "need[ed] to chill," and left the bedroom without doing anything. Thereafter, he witnessed Appellant walking in and out of the house, bringing his shoes and other personal items to the car parked outside. Meanwhile, D.W.B. was throwing things at Appellant, such as "hangers and shoe boxes," and hitting Appellant with the objects he was packing to take to the car. When D.B. walked outside, he saw Appellant and D.W.B. on the ground "rolling around." D.B. recalled that his mother was "swinging and hitting" Appellant, while Appellant was trying to "get his stuff and get her off of him." D.B. broke up the fight by punching Appellant in the top or back of his head. He testified that he never witnessed Appellant choking D.W.B., and she never said anything to him about it. However, D.B. never informed law enforcement that he believed his mother was the aggressor, both because he was unsure whether his mother told law enforcement about something D.B. did not personally see, and because he generally would "rather not talk to [police]."

The State also introduced a recorded phone call between Appellant and D.W.B. into evidence, which occurred while Appellant was in jail awaiting trial. During the call, Appellant asked D.W.B. whether she would "try to get this case off [him]." D.W.B. replied that she would "do what [she] can," but needed Appellant to tell her "what do you want me to say, what do I need to do?" Appellant instructed D.W.B. to go to the district attorney's office "every Friday when you're off work," "demand" to speak to the attorney in charge of his case, and say that "you are not going to testify, that nothing happened between us, we just got into an argument and nothing physical happened between us at all." Appellant further directed D.W.B. to say that "these charges need to be dropped, because [Appellant] didn't do anything[,]" and that the

3

subject of the argument is "none of their business[.]" He then stated twice, "You've got to get me out of here." D.W.B. replied, "All right… I hear what you said, and I'm going to do it."

The jury found Appellant "guilty" of the charged offense. At the punishment phase of trial, Appellant pleaded "true" to two enhancement paragraphs based on his previous felony convictions for aggravated assault and murder. The jury sentenced Appellant to life imprisonment. This appeal followed.

## LESSER INCLUDED OFFENSE INSTRUCTION

In his first issue, Appellant contends that the trial court erred in denying his request for a jury instruction on the misdemeanor offense of assault family violence.

### Standard of Review and Applicable Law

We review a trial court's refusal to submit a lesser included offense instruction for abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). Whether a defendant is entitled to a lesser included offense instruction turns on a two-part test. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a "lesser included offense" under Article 37.09 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2023); *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). This is a question of law and does not depend on the evidence raised at trial. *Cavazos*, 382 S.W.3d at 382; *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). In making this comparison, we look only to the statutory elements and the indictment. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (per curiam).

Under Texas Code of Criminal Procedure Article 37.09, an offense is a lesser included offense if

> (1) it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged;
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

*See* TEX. CODE CRIM. PROC. ANN. art. 37.09. If the offense is a lesser included offense under Article 37.09, we move to the second step and consider whether the evidence shows that if the appellant is guilty, he is guilty only of the lesser offense. *Cavazos*, 382 S.W.3d at 383.

**Analysis**

At trial, Appellant's counsel requested a lesser included offense instruction for assault family violence causing bodily injury, a misdemeanor. Appellant argues on appeal that D.W.B.'s injuries could have been caused in ways other than by impeding her breath or circulation. He specifically contends that he was entitled to the requested instruction because the jury could have believed both that Appellant assaulted D.W.B. and caused her bodily injury during what he admits was a "physical altercation," and that Appellant did not choke her in doing so.

The Court of Criminal Appeals previously addressed and rejected this argument, holding, "[B]odily-injury assault is not a lesser-included offense of occlusion assault when the disputed element is the injury because the statutorily specified injury of impeding normal breathing or blood circulation is exclusive of other bodily injuries." *Ortiz v. State*, 623 S.W.3d 804, 805 (Tex. Crim. App. 2021). In *Ortiz*, the Court resolved appeals from two cases in which the defendants requested submission of bodily-injury assault as a lesser included offense of occlusion assault. *Id.* at 806-09. In concluding that the defendants were not entitled to "instructions for the lesser offense of bodily-injury assault for non-impeding injuries," the Court found that "non-impeding injuries are not included in occlusion assault because they were not proven by the same or less facts than required to prove occlusion assault; they are proven by different, additional facts." *Id.* at 808-09.

In this case, Appellant disputes only the injury element of the occlusion assault offense. Because "[o]cclusion assault's focus on a narrowly defined injury forecloses an instruction on an assault that results in a different injury," we need not continue to the second step of the analysis. *Id.* at 810; *Cavazos*, 382 S.W.3d at 383. We conclude that the trial court did not abuse its discretion in refusing to instruct the jury on misdemeanor assault. We overrule Appellant's first issue.

**SUFFICIENCY OF THE EVIDENCE**

In his second issue, Appellant argues that the evidence is legally insufficient to support a finding that he choked D.W.B. as alleged in the indictment, as was necessary to convict him of assault of a family member by impeding breath or circulation.

**Standard of Review**

When evaluating the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A reviewing court must give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the appellant's guilt, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the

indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Applicable Law**

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another[.]" TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2023). The offense is generally a Class A misdemeanor but is elevated to a third-degree felony if: (1) the offense is committed against a member of the defendant's family as described by Family Code Section 71.003; and (2) "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id.* § 22.01(b)(2)(B); TEX. FAM. CODE ANN. § 71.003; *see also Price v. State*, 457 S.W.3d 437, 443 (Tex. Crim. App. 2015) (noting that "by applying pressure to the person's throat or neck or by blocking the person's nose or mouth" are manner and means "by which the result—impeding normal breathing or circulation of the blood—may be achieved.").

**Analysis**

Officers Nipp, Torres, and Avelar all testified at trial that D.W.B. stated Appellant choked her, and all three similarly averred that the marks on D.W.B.'s neck were consistent with the strangulation she described. The jury, as finder of fact, was entitled to find the police officers' testimony credible on these points. *See Lee*, 176 S.W.3d at 458. Moreover, the jury watched video footage of D.W.B.'s initial statements about the assault and could therefore evaluate her demeanor. The State also introduced pictures showing the injuries to D.W.B.'s neck. While D.W.B. recanted her testimony at trial and testified she was the initial aggressor, both she and Appellant hit each other, and that Appellant did not choke her, the jury was free to resolve the inconsistencies in D.W.B.'s prior statements and her trial testimony by accepting the former as true, and we must defer to its resolution. *See Clayton*, 235 S.W.3d at 778; *see also Dunklin v. State*, 194 S.W.3d 14, 29 (Tex. App.—Tyler 2006, no pet.) ("Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive.").

Viewing the record in the light most favorable to the trial court's verdict, we conclude that despite D.W.B.'s recantation, a rational jury could have found each element of assault of a family member by impeding breath or circulation beyond a reasonable doubt. *See, e.g., Szarf v.*

7

***State***, No. 01-22-00530-CR, 2023 WL 5110997, at *9 (Tex. App.—Houston [1st Dist.] Aug. 10, 2023, no pet.) (mem. op., not designated for publication) (evidence sufficient to support guilty verdict for occlusion assault where victim initially stated defendant choked her, but recanted at trial); ***Pope v. State***, No. 12-22-00225-CR, 2023 WL 6157421, at *3 (Tex. App.—Tyler Sept. 20, 2023, no pet.) (mem. op., not designated for publication) (same); ***Hennard v. State***, No. 10-14-00324-CR, 2015 WL 5474796, at *3 (Tex. App.—Waco Sept. 17, 2015, no pet.) (mem. op., not designated for publication) (same). We overrule Appellant's second issue.

<u>MOTION FOR SPEEDY TRIAL</u>

In his third issue, Appellant contends that the trial court violated his right to a speedy trial.

**Standard of Review and Applicable Law**

The Sixth Amendment of the United States Constitution, which is applicable to the states through the Fourteenth Amendment, guarantees an accused the right to a speedy trial. U.S. CONST. amends. VI, XIV; ***Gonzales v. State***, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014); ***Cantu v. State***, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). We analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. ***Gonzales***, 435 S.W.3d at 808 (citing ***Barker v. Wingo***, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972)). This balancing test requires weighing case by case "the conduct of both the prosecution and the defendant." ***Barker***, 407 U.S. at 530, 92 S.Ct. at 2192. No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. ***Id.***, 407 U.S. at 533, 92 S.Ct. at 2193; ***Jimerson v. State***, 629 S.W.3d 569, 574 (Tex. App.—Tyler 2021, no pet.). The related factors must be considered together with any other relevant circumstances, and as no factor possesses "talismanic qualities," courts must engage in a "difficult and sensitive balancing process" in each individual case. ***Jimerson***, 629 S.W.3d at 574 (quoting ***Cantu***, 253 S.W.3d at 281).

In reviewing a trial court's decision on a speedy trial claim, we apply a bifurcated standard of review. *See **Munoz v. State***, 991 S.W.2d at 818, 821 (Tex. Crim. App. 1999). We review factual issues for an abuse of discretion and legal issues de novo. ***Id.*** Review of the

individual **Barker** factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." **Cantu**, 253 S.W.3d at 282.

## Preservation of Error

We begin with the State's threshold argument that appellant has not preserved his complaint for appellate review.[2] In **Henson v. State**, the Court of Criminal Appeals held that preservation requirements apply to speedy trial claims, and an appellant must properly raise a speedy trial claim in the trial court to preserve the issue for appellate review. 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013). To preserve a complaint for appellate review, the complaining party must first make a timely request, objection, or motion that states the grounds for the ruling sought. *See* TEX. R. APP. P. 33.1. The complaining party must then obtain an adverse ruling from the trial court on his request, objection, or motion, or the complaining party must object to the trial court's refusal to rule. *Id.* These rules express the "general policy that an appellate court should not reverse a trial court on a matter that was never brought to the trial court's attention." **Thompson v. State**, No. 14-16-00413-CR, 2018 WL 4139038, at *2 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (citing **Carranza v. State**, 960 S.W.2d 76, 78–79 (Tex. Crim. App. 1998)).

In **Henson**, the defendant failed to preserve error because he "made no effort to demand a speedy trial"— he did not file a motion, did not request a hearing, and "explicitly" agreed to twenty-five separate resettings of the case. 407 S.W.3d at 769. In this case, Appellant did file a motion for speedy trial, which is germane to the first requirement of error preservation. However, Appellant filed his motion pro se even though he was represented by counsel, and counsel never adopted or ratified the motion. Because a defendant has no right to hybrid

---

[2] The State cites this Court's recent opinion in **Wickware v. State** as standing for the proposition that "where there is sufficient relevant information in the record concerning "the length of the delay, reason for the delay, assertion of the right, and prejudice," the consideration of whether the speedy trial error has been preserved would be foreclosed. *See* **Wickware v. State**, No. 12-22-00180-CR, 2023 WL 5666218, at *4 (Tex. App.—Tyler Aug. 31, 2023, no pet.) (mem. op., not designated for publication) (quoting **Taylor v. State**, 667 S.W.3d 809, 810 (Tex. Crim. App. 2023)). This language pertains not to preservation of error, but rather to whether the lack of an evidentiary hearing before the trial court required this Court to remand the matter for such a hearing. In that case, accepting the State's argument, we concluded that "sufficient relevant information" was present in the record for us to complete a **Barker** analysis and disposed of Wickware's claim on appeal. *Id.* at *7. We further note that in **Wickware**, contrary to the State's claim herein that it "argued on appeal that Wickware had not properly preserved his speedy trial claim," the State declared generally in its brief that "[e]rror preservation requirements apply to appellate review of a defendant's speedy-trial complaint," but failed to actually claim or argue that Wickware failed to preserve his complaint. *See* TEX. R. APP. P. 38.1(i) (appellate brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); 38.2(a)(1) (appellee's brief must generally conform to the requirements of Rule 38.1).

representation, the trial court was free to disregard Appellant's pro se motion. *See **Robinson v. State***, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Moreover, the "mere filing" of a motion does not preserve for appellate review a complaint of violation of the right to a speedy trial— a motion must be "presented" to the trial court to preserve error, meaning that "the movant must make the trial judge aware of the motion by calling the judge's attention to it in open court" and obtain a ruling thereon. ***Crocker v. State***, 441 S.W.3d 306, 311-12 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting ***Guevara v. State***, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). Because Appellant never obtained an adverse ruling on his pro se motion for speedy trial, we conclude that he has not preserved his complaint for appellate review. Consequently, we overrule Appellant's third issue.

## DISPOSITION

Having overruled each of Appellant's three issues, we ***affirm*** the judgment of the trial court. All pending motions are ***overruled as moot***.

**BRIAN HOYLE**
Justice

Opinion delivered July 3, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 3, 2024**

**NO. 12-23-00123-CR**

**BRANDON ASHLEY BACON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1640-22)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things **affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*