

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00784-CR

Joseph Sanchez **CONTRERAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CR11338
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: May 6, 2026

AFFIRMED

A jury convicted appellant, Joseph Sanchez Contreras, of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03. The trial court, in light of Contreras's status as a habitual offender, sentenced him to the statutory minimum of twenty-five years' imprisonment. In two issues, Contreras contends that he was denied a speedy trial and his attorney provided ineffective assistance by failing to request the lesser included offense of theft in the jury charge. We affirm.

# I. BACKGROUND

Contreras was arrested on September 28, 2020, on a charge of aggravated robbery arising from an incident earlier that day at a Family Dollar. Unable to post the $65,000 bond, Contreras remained in jail. He was indicted on November 19, 2020. On January 27, 2021, Contreras filed a motion for speedy trial. On August 6, 2021, he filed an application for habeas relief and a reduction of the bond amount. Contreras's habeas application asserts that "the State cannot provide a speedy trial as jury service has again been suspended in Bexar County under August 4, 2021 Local Administrative Judge's Order[.]" At the December 12, 2021 hearing on Contreras's request for a bond reduction, he did not assert his request for a speedy trial; the trial court reduced bond to $50,000. Contreras remained in custody until his trial on May 24, 2022.

At trial, Alice Osowiecki testified that on September 28, 2020, she was working at a Family Dollar in San Antonio, Texas. As Osowiecki was working in the back of the store, she recognized Contreras in the candy aisle. Osowiecki saw Contreras "getting it" and "stuffing it in his jacket." Osowiecki asked Contreras to return the merchandise, and he responded, "don't 'F' with me." Contreras then pulled out "a blade — a black knife out of his side." When Contreras opened his jacket to reach for the knife, Osowiecki saw "all the candy and some other stuff that he stole." Contreras waved and flicked the knife toward Osowiecki and another customer who had come to her aid. All the while, he continued to tell Osowiecki to "leave him effing alone or he's going to 'F' us up." Osowiecki then called the police, and that prompted Contreras to put his knife away and walk out of the store. As Contreras was in the store's parking lot, he turned back, pulled the knife back out, and told Osowiecki that he would return for her when she got off work.

On cross examination, Contreras's counsel questioned Osowiecki on the fact that the store's surveillance cameras would have captured Contreras taking the merchandise and that

Osowiecki knew the customer who came to her aid but did not provide his name to the investigating police officers. Contreras's counsel impeached Osowiecki on a prior inconsistent statement. On police bodycam footage admitted into evidence, Osowiecki told officers she was not afraid of "him;" at trial, she testified she meant "them." Osowiecki elaborated what she meant was that she generally is not afraid of shoplifters, but Contreras frightened her enough to call the police. Osowiecki recalled that, in addition to candy bars, Contreras stole a couple of electronics valued at eight to ten dollars.

Eric Torres, a police officer with the San Antonio Police Department, responded to the call for service, and he interviewed Osowiecki. After other police officers found Contreras nearby and returned him to the store, Officer Torres searched him. Officer Torres recalled Contreras had a knife in his possession. No merchandise believed to be stolen was found on Contreras. Contreras's counsel questioned Officer Torres on whether he knew of the other customer who came to Osowiecki's aid. Officer Torres did not know of this other customer. Officer Torres did not interview the other store employee. Officer Torres acknowledged that, because none of the allegedly stolen merchandise was found on Contreras, reviewing surveillance video from the relevant area would have been important to establishing that a theft occurred.

Contreras testified that he visited the Family Dollar to check the balance on a debit card, and then he decided to get ice cream. The store did not have the ice cream that Contreras wanted, and he left. Contreras denied stealing any items or displaying a knife. When the arresting officers told Contreras that he was being charged with aggravated robbery, he asked them what the surveillance video showed. On cross examination by the State, Contreras could not explain how Osowiecki knew he had a black knife if he never pulled it out in her presence. After leaving, he went to a nearby Dollar General and stole ice cream.

During closing arguments, Contreras's counsel argued the State presented no evidence that Osowiecki was placed in fear of imminent bodily injury or death or that Contreras stole or even attempted to steal candy or electronics from the Family Dollar. Contreras's counsel also argued the State failed to present corroborating evidence, such as testimony from the cashier or the other customer who came to Osowiecki's aid. Contreras's counsel framed the ice cream that he stole from the Dollar General in contrast with the alleged charge of aggravated robbery, arguing:

> You know why he told you that? Because my client takes responsibility for his actions. My client takes responsibility for what he does. But he — but don't confuse the situation. We are not here for a shoplifting case at a Dollar General. That is not why we're here. That charge tells you we are here for an aggravated robbery . . . . That's why you're here. Don't confuse that issue.

The jury charge included only the offense of aggravated robbery. The jury found Contreras guilty. After the jury's verdict, Contreras pleaded true to two prior convictions. Both sides recommended the statutory mandatory minimum of twenty-five years' imprisonment, which the trial court imposed. Contreras filed a motion for new trial asserting that the jury's verdict was contrary to the law and against the great weight and preponderance of the evidence. No hearing on the motion is reflected in the record. Contreras timely appeals.

## II. Speedy Trial

In Contreras's first issue, he argues the length of the delay from when he was arrested on September 28, 2020 until he was tried on May 24, 2022 constitutes a violation of his right to a speedy trial under the U.S. Constitution. The State emphasizes Contreras failed to raise the issue before the trial court. Consequently, no evidentiary hearing was held to support a speedy trial violation.

Preservation requirements apply to speedy-trial claims. *Henson v. State*, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013). In *Bacon v. State*, No. 12-23-00123-CR, 2024 WL 3292666, at *6

(Tex. App.—Tyler July 3, 2024, no pet.) (mem. op., not designated for publication), our sister court observed:

> [T]he "mere filing" of a motion does not preserve for appellate review a complaint of violation of the right to a speedy trial — a motion must be "presented" to the trial court to preserve error, meaning that "the movant must make the trial judge aware of the motion by calling the judge's attention to it in open court" and obtain a ruling thereon.

*Id.* (citing *Crocker v. State*, 441 S.W.3d 306, 311–12 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd))); *see also Romero v. State*, No. 05-23-00689-CR, 2025 WL 992710, at *8 (Tex. App.—Dallas Apr. 2, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that a speedy trial complaint was not preserved where a speedy trial motion was filed, but it was never heard; and the record did not reflect that the motion was ever ruled on or even that a ruling was sought). In this case, as in *Bacon* and *Romero*, Contreras filed a speedy trial motion. However, there is no indication that the motion was ever heard or that a ruling was ever sought. Indeed, Contreras's appellate brief acknowledges that "[i]t doesn't appear the motion [for a speedy trial] was ever taken up by the court." Accordingly, Contreras failed to preserve his speedy trial complaint.

We overrule Contreras's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In Contreras's second issue, he argues, for the first time on appeal, that he was rendered ineffective assistance of counsel because his trial counsel failed to request an instruction on the lesser included offense of theft. The State argues that Contreras's trial counsel was not ineffective because not requesting the lesser included charge may have been reasonable trial strategy.

**A.    Applicable Law**

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set the two-pronged test for determining claims of ineffective assistance of counsel: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice because of counsel's error.  *See Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023).  Both prongs are assessed under the totality of the circumstances as they existed in trial.  *Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012).  "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."  *Gonzales v. State*, No. 04-24-00283-CR, 2025 WL 1248621, at \*2 (Tex. App.—San Antonio Apr. 30, 2025, pet. ref'd) (mem. op., not designated for publication) (quoting *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009)).

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness."  *Id.* (quoting *Hart*, 667 S.W.3d at 781).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  We review defense counsel's representation with high deference and presume that counsel acted within the range of professional assistance and reasonableness.  *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  Absent an opportunity for trial counsel to explain their conduct, "an appellate court should not find deficient performance unless the challenged conduct was so 'outrageous that no competent attorney would have engaged in it.'"  *Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App. 2022) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).  "We will not second-guess legitimate strategic or tactical decisions made by counsel in the midst of trial."  *Williams*, 301 S.W.3d at 687.

**B.      Arguments & Analysis**

Contreras relies on *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994), for its holding that "a defendant is entitled to an instruction on a lesser included offense if evidence, from any source, affirmatively raises the issue." However, *Bignall* concerned a trial court's refusal to submit the charge on the lesser included offense of theft after the defendant's counsel requested it. *See Bignall v. State*, 899 S.W.2d 282, 283 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (op. on remand). Here, the issue Contreras presents is whether his trial counsel was ineffective for not requesting a lesser charge instruction. Moreover, raising this issue for the first time on appeal, the record here is silent as to counsel's reasoning. Absent such evidence, we must presume counsel acted reasonably. *See Sandoval*, 665 S.W.3d at 545.

In *Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004), referenced by the State, the Texas Court of Criminal Appeals held that the appellant's counsel was not ineffective for failing to request jury instructions on lesser included offenses because the defendant chose not to request them as part of an "all-or-nothing" trial strategy. The record here suggests, as in *White*, that Contreras's counsel adopted an all-or-nothing trial strategy.

Contreras's counsel's opening statement asserted that "the officers didn't find a single item that Ms. Osowiecki claimed was taken." Later, in cross examining of Officer Torres, Contreras's counsel asked, "And you were searching for items that were allegedly taken from the store?" Officer Torres answered, "Yes, ma'am." Contreras's counsel followed up, "But you didn't find any of these items on my client, right?" To which, Officer Torres answered, "No, ma'am." In questioning Mario Prado, another San Antonio police officer who helped in the investigation, Contreras's counsel asked, "And, once again, nothing that the complaining witness said was stolen

was found on my client, right?" Before closing arguments, Contreras's counsel requested a directed verdict because:

> . . . there's been no evidence to show that my client stole anything from the — from that Family Dollar from that store . . . There's been no evidence to show that my client attempted to steal or stole anything from the Family Dollar . . . . And for those reasons, I am asking you to grant my motion for a directed verdict.

In closing arguments, Contreras's counsel argued, "You've received absolutely no credible evidence that my client stole or even attempted to steal any candy or electronics from that store."

We cannot conclude Contreras's counsel's all-or-nothing trial strategy was unreasonable under the circumstances. *Bone*, 77 S.W.3d at 833. The record shows Contreras's counsel tried to obtain an acquittal based on the lack of evidence as to the items that were allegedly stolen. Contreras's counsel may have reasonably believed this strategy was an effective way to counter the inference that Osowiecki's knowledge of the knife's color supported brandishing. The record contains no affidavit from trial counsel. Thus, we cannot conclude Contreras's counsel's performance was so "outrageous that no competent attorney would have engaged in it."[1] *See Sandoval*, 665 S.W.3d at 545. Because we will not second guess the trial counsel's strategy, we overrule Contreras's second issue. *See Williams*, 301 S.W.3d at 687.

## IV. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH

---

[1] Because Contreras failed to satisfy that his trial counsel's actions satisfied the first prong of the *Strickland* test, we need not address the second prong regarding prejudice. *See Williams*, 301 S.W.3d at 687.