# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00015-CR

## Ex parte Jerry Lavone Lively, Jr.

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2017-873,
### THE HONORABLE ELMA TERESA SALINAS-ENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Jerry Lavone Lively, Jr., pleaded guilty to the offense of continuous violation of a protective order and was placed on deferred-adjudication community supervision for ten years. Lively later filed an application for writ of habeas corpus, which the district court denied. In six issues on appeal, Lively asserts that (1) the district court failed to "fully develop" and "fully adjudicate" his habeas claims; (2) his guilty plea was invalid; (3) he received ineffective assistance of two prior trial counsel before he represented himself pro se; (4) he was denied his right to a speedy trial; (5) the State failed to disclose evidence; and (6) he was actually innocent of the offense. We will affirm the district court's order.

## BACKGROUND[1]

In November 2017, the State charged Lively with the offense of aggravated assault with a deadly weapon, alleging that on or about May 27, 2017, Lively had intentionally

---

[1] The following factual summary is compiled from various documents in the clerk's and reporter's records filed in this case.

or knowingly threatened his wife with imminent bodily injury by pointing a gun at her. In a separate indictment, the State charged Lively with the offense of continuous violation of a protective order, alleging that Lively had violated a protective order entered against him on behalf of his wife by going to or near his wife's residence on four separate occasions in May and June 2017.[2] Lively was released on bond following his arrest on each charge and has resided in Tennessee throughout most of this case.

In December 2017, Lively hired counsel to represent him. In January 2018, that counsel filed a motion to withdraw on the ground that Lively desired to dismiss him and his firm. Following a hearing, the district court granted the motion. Lively then filed an affidavit of indigence and application for a court-appointed attorney, and the district court appointed counsel to represent him. On Lively's behalf, appointed counsel obtained several resets of the case. Then, in July 2019, appointed counsel filed a motion to withdraw, representing that "a conflict has arisen in the case of such a nature that Counsel cannot effectively represent Mr. Lively." Following a hearing, at which Lively agreed that he was "difficult to work with," the district court granted the motion and appointed another attorney to represent Lively. That attorney obtained a reset for Lively in February 2020, shortly before the COVID-19 pandemic began. Then, in August 2020, that counsel also filed a motion to withdraw, once again due to a "conflict" between Lively and counsel. In September 2020, following a *Faretta* hearing at which the district court found that Lively was knowingly and intelligently waiving his right to counsel, *see Faretta v. California*, 422 U.S. 806 (1975), the district court allowed Lively to represent himself.

---

[2] Lively's wife filed for divorce in 2017, and the trial court granted the divorce decree in 2021. *See Lively v. Lively*, No. 03-21-00317-CV, 2022 WL 3567722, at *1-2 (Tex. App.— Austin Aug. 19, 2022, no pet.) (mem. op.).

After that, Lively began challenging the scope of discovery provided to him by the State. On November 3, 2020, the district court ordered the case file sealed with the district clerk but available for review in person by Lively. Lively then filed a lawsuit in federal district court, alleging that he had sought discovery from the State under the Michael Morton Act, *see* Tex. Code Crim. Proc. art. 39.14(h), but that discovery had not been provided to him, *see Lively v. Tharp*, No. SA-20-CA-1311-OLG (HJB), 2021 WL 2931440, at *1 (W.D. Tex. June 7, 2021) (report and recommendation of magistrate). That suit was dismissed in June 2021. *See Lively v. Tharp*, No. 5:20-CV-1311-OLG, 2021 WL 2930090, at *2 (W.D. Tex. June 29, 2021) (order adopting magistrate's recommendation of dismissal).

In August and September 2021, Lively filed a petition for writ of mandamus in this Court and a separate petition for writ of mandamus in the Texas Supreme Court. In each petition, Lively sought "direct access" to the grand jury "for the purposes of presenting information about offenses subject to indictment." Both this Court and the Texas Supreme Court denied the petitions. *See In re Lively*, No. 03-21-00424-CV, 2021 WL 4173886, at *1 (Tex. App.—Austin Sep. 15, 2021, orig. proceeding) (mem. op.).[3] Also in 2021, Lively asserted his right to a speedy trial, filed other motions with the district court, continued to assert that he was being denied access to evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and the Michael Morton Act, Tex. Code Crim. Proc. art. 39.14, and filed a motion for appointment of standby counsel. The district court granted Lively's motion for standby counsel.

Lively filed a motion for speedy trial in January 2022 and a motion to set aside the indictment for violating his right to a speedy trial in February 2022. The district court denied

---

[3] The Texas Supreme Court denied the petition without issuing an opinion. *See* No. 03-21-0805, https://www.txcourts.gov/supreme/orders-opinions/2021/october/october-22-2021/.

the motion to set aside the indictment and made written findings of fact and conclusions of law explaining its ruling. Finally, in November 2022, Lively entered into a plea-bargain agreement with the State, pleading guilty to the offense of continuous violation of a protective order in exchange for the State agreeing to a recommended sentence of ten years' deferred adjudication and to dismiss the aggravated-assault charge, among other terms.

Approximately one year later, Lively filed an application for writ of habeas corpus, which the district court denied. The district court also made findings of fact and conclusions of law. This appeal followed.[4]

---

[4] After Lively appealed, this Court abated the appeal and remanded the case to the district court for entry of an amended order clarifying the basis on which it had denied relief and containing additional findings of fact and conclusions of law if necessary. *See Ex parte Lively*, No. 03-24-00015-CR, 2024 WL 1811437, at *3 (Tex. App.—Austin Apr. 26, 2024) (per curiam order & mem. op., not designated for publication). The district court amended its order accordingly and made additional findings. The State has filed supplemental briefing opposing this Court's abatement order and asking us to "affirm based on the Trial Court's original Order, and recognize abatement [was] not required" here.

We deny the State's request. As we explained in our abatement order, the district court's original order lacked clarity as to whether the district court was denying relief after considering the merits of Lively's application or because it found from the face of the application that it was frivolous and that Lively was "manifestly entitled to no relief." *See* Tex. Code Crim. Proc. art. 11.072, § 7(a). Under article 11.072, finding an application frivolous and denying relief on the merits are "mutually exclusive" alternatives. *Ex parte Griffin*, No. 03-21-00198-CR, 2023 WL 2837487, at *3 (Tex. App.—Austin Apr. 7, 2023) (order & mem. op., not designated for publication). "Determining from the face of an application for habeas corpus and accompanying documents whether the applicant is 'manifestly entitled to no relief' does not involve making findings of fact or evaluating the credibility of witnesses." *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 88 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In its original order, the trial court concluded that the application was frivolous but also made findings of fact that were inconsistent with that conclusion, including findings as to the credibility of Lively and his appointed counsel. Consequently, abatement was necessary to clarify the district court's order and ensure that it was consistent with the procedures of article 11.072. *See Ex parte Enriquez*, 227 S.W.3d 779, 784-85 (Tex. App.—El Paso 2005, pet. ref'd). Moreover, if the district court was in fact denying relief on the merits, as we now know that it was, then those findings needed to be "adequate and complete," "covering every potentially dispositive issue" that is necessary to the disposition of this appeal. *See State v. Elias*, 339 S.W.3d 667, 676-77 (Tex. Crim. App. 2011). The findings in

## STANDARD OF REVIEW AND GOVERNING LAW

An individual convicted of a felony or misdemeanor may seek habeas "relief from an order or judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. When making its determination of whether an applicant is entitled to relief, the trial court "may order affidavits, depositions, interrogatories, or a hearing, and may rely on [its] personal recollection." *Id*. art. 11.072, § 6(b).

"Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard of review." *Ex parte Ramirez*, 652 S.W.3d 841, 846 (Tex. App.—Austin 2022, no pet.) (citing *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). "'A trial court abuses its discretion when its ruling is arbitrary or unreasonable.'" *Id*. (quoting *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd)). "But a trial court does not abuse its discretion if its ruling lies within 'the zone of reasonable disagreement.'" *Id*. (quoting *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008)). "Under that standard, appellate courts review the record evidence 'in the light most favorable to the trial court's ruling.'" *Id*. (quoting *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.)).

"The writ of habeas corpus is an extraordinary remedy." *Id*. (citing *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014)). "To succeed under a post-conviction writ of habeas corpus, the applicant must prove, 'by a preponderance of the evidence, the facts that would entitle him to relief.'" *Id*. (quoting *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd)). "In habeas corpus proceedings, '[v]irtually every fact finding involves

the original order did not satisfy this requirement, and thus it was proper for this Court to abate for additional findings.

a credibility determination,' and 'the fact finder is the exclusive judge of the credibility of the witnesses.'" *Id*. (quoting *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996)). "For habeas proceedings under article 11.072, 'the trial court is the sole finder of fact,' and appellate courts afford 'almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor.'" *Id*. (quoting *Ex parte Ali*, 368 S.W.3d at 830). "This deferential review applies even when the findings are based on affidavits rather than live testimony. *Id*. (citing *Ex parte Thompson*, 153 S.W.3d 416, 418 n.1 (Tex. Crim. App. 2005)). "'When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted' by the reviewing court." *Id*. (quoting *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006)).

## DISCUSSION

**Full development and fair adjudication of claims**

In his first issue, Lively asserts that the district court "failed to fully develop and fairly adjudicate cognizable claims" in his habeas application. More specifically, Lively contends that the district court abused its discretion by finding his application to be frivolous without fully considering the merits of his claims and by failing to hold a live hearing on his application.

Although the district court's original order denying relief included a finding that the district court determined Lively's application to be frivolous, the amended order does not. Instead, the amended order fully addresses the merits of Lively's claims, providing detailed findings of fact and conclusions of law as to each claim that Lively raised in his application, which we discuss in more detail below when discussing Lively's claims. We find nothing in the

6

amended order suggesting that the district court failed to fully consider or fairly adjudicate Lively's cognizable claims.

As for Lively's complaint that the district court failed to hold a live hearing on his application, holding such a hearing is generally discretionary under article 11.072. *See* Tex. Code Crim. Proc. art. 11.072, § 6(b) ("In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection."); *Ex parte Gonzalez*, 323 S.W.3d 557, 558 (Tex. App.—Waco 2010, pet. ref'd) ("As with article 11.07, the legislature invested trial courts with broad discretion with regard to the means by which controverted fact issues may be resolved in habeas proceedings under article 11.072."); *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) ("While section 6(b) clearly indicates that in making its determination the trial court *may* order affidavits, depositions, interrogatories, or a hearing, it does not *require* that the trial court do so."). Here, the district court indicated in its amended order that in ruling on Lively's application, it considered, among other documents:

> the pleadings and proceedings on file in both CR2017-872 and CR2017-873 (as these two cases have proceeded before this trial judge and the previous trial judge at the same time), Applicant's November 13, 2023 Application and supporting documents, the State's December 13, 2023 Answer and Appendix . . , Applicant's December 18, 2023 response (as well as other filings and/or communications subsequent to that original response), the transcript from the November 28, 2022 plea hearing (as well as other transcripts that exist from previous hearings before this judge and the previous trial judge), . . . affidavits attached from attorneys previously appointed to represent Applicant, . . . affidavits attached to the pleadings filed by the State and submitted by the self-represented Applicant (pro se), and this Court's own independent personal recollection.

On this record, we cannot conclude that the district court abused its discretion by failing to hold a hearing on Lively's claims. *See Gonzalez*, 323 S.W.3d at 561 ("Here, the trial court considered

[the applicant's] application, the State's answer, the court's records, and the court's personal recollection before making its findings of fact. Nothing more is required.").

We overrule Lively's first issue.

**Validity of guilty plea**

In his second issue, Lively asserts that his guilty plea was invalid for two reasons. First, he argues that the State unlawfully induced him into pleading guilty. Second, he argues that his plea was not made voluntarily with an understanding of the nature of the charge and the consequences of the plea.

"A guilty plea involves the waiver of several constitutional rights and therefore must be entered knowingly, intelligently, and voluntarily with sufficient awareness of the relevant circumstances and likely consequences." *Ex parte Christian*, 714 S.W.3d 1, 5 (Tex. Crim. App. 2024) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "Guilty pleas induced by threats, improper promises, or misrepresentations are not voluntarily entered." *Id.* "Voluntariness is determined by considering all of the relevant circumstances surrounding a guilty plea." *Id.* The "key factor" in the analysis is "whether a defendant has 'sufficient awareness of the relevant circumstances and likely consequences' such that his plea is a knowing, intelligent act." *Id.* (quoting *Ex parte Barnaby*, 475 S.W.3d 316, 322-23 (Tex. Crim. App. 2015)).

Here, the record reflects that on November 21, 2022, Lively filed with the district court a "waiver of jury trial" referencing an "agreed upon plea bargain." One week later, Lively appeared before the district court, accompanied by standby counsel. At the beginning of the plea hearing, the district court informed Lively of what was about to happen and that he could stop

8

the proceedings and speak to standby counsel at any time. Lively indicated that he understood and informed the district court that he was 55 years old, a United States citizen, and had a bachelor's degree in computer information systems. The district court proceeded to ask Lively if he had read the plea documents before he signed them and understood the consequences of his plea, and Lively answered in the affirmative. The State then summarized the terms of the plea bargain, including that Lively be placed on deferred-adjudication community supervision for ten years and that the State dismiss the aggravated-assault charge against him. Lively again indicated that he understood.

The district court also addressed Lively's mental competency because of issues that Lively had raised earlier in the proceedings that "touched on" his competency.[5] Lively indicated that he understood the nature of the proceedings against him and was knowingly waiving his rights. Standby counsel also expressed his belief that Lively was competent to stand trial. The district court made additional inquiries into Lively's understanding of the plea and then received Lively's plea.

After that, the State offered and the district court admitted into evidence the plea papers and accompanying exhibits, which included a document entitled "Admonishments, Voluntary Statements, Waivers, Stipulations, Judicial Confession & Plea Bargain Agreement." In this document, Lively stipulated, admitted, and judicially confessed that he "committed each

---

[5] Lively, a military veteran, has maintained throughout the case that he suffers from chronic post-traumatic stress disorder (PTSD), depression, anxiety disorder, and suicidal ideation. Earlier in the case, Lively had provided the court with VA medical records from a clinical psychologist who had begun treating Lively following a suicide attempt in 2017. The psychologist had diagnosed Lively with "Major Depressive Disorder, moderate, recurrent." In an October 2018 letter addressed "to whom it may concern," the psychologist wrote that Lively had been receiving antidepressant medications for his symptoms while receiving psychotherapy treatment.

and every element of the offense(s) as alleged in the indictment . . . and that [he was] in fact GUILTY of the offense alleged . . . ." Lively agreed to plead guilty to the charged offense of continuous violation of a protective order and waive his right to appeal, including "all matters raised by written motions filed prior to trial." The agreement also contained statements indicating that Lively understood the nature of the charges and that he was competent to stand trial. Lively initialed each page of the document and signed his name at the end of the document, below a paragraph indicating that he understood the admonishments. Below that, standby counsel signed a similar statement indicating that he believed Lively was mentally competent, understood the admonishments, was aware of the consequences of the plea, and was freely, voluntarily, knowingly, and intelligently pleading guilty to the offense and waiving his rights.

In his habeas application, Lively asserted that his plea was invalid for two reasons. First, he argued that the State unlawfully induced his plea by pursuing a second charge against him for the offense of aggravated assault. Second, Lively argued that he had been diagnosed with a "severe mental health illness" that resulted in his inability to knowingly, intelligently, and voluntarily waive his constitutional rights. The district court would not have abused its discretion in rejecting both contentions.

Regarding the State's agreement to dismiss the aggravated-assault charge in exchange for Lively pleading guilty to the offense of continuous violation of a protective order, this is an example of charge-bargaining, a permissible plea-bargaining practice. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003). As with other plea-bargaining practices, charge-bargaining renders a plea involuntary only if the State coerces the defendant into pleading guilty through threats, improper promises, or misrepresentations. *See Brady*, 397 U.S. at 750-51; *Christian*, 714 S.W.3d at 5; *see also Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978) ("While

10

confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"); *United States v. Quisenberry*, 198 F.3d 248 (Table), Nos. 98-3618, 98-3994, 98-4156, 1999 WL 1073659, at *6 (6th Cir. 1997) (concluding that guilty plea was valid "even if it were the case that another charge, fear of which helped induce the guilty plea, were to turn out to lack adequate foundation"); *Torrez v. State*, 925 S.W.2d 361, 362 (Tex. App.—Fort Worth 1996, no pet.) (plea not involuntary when State agreed to dismiss charge against defendant's family member in exchange for defendant pleading guilty to charge against him). Lively provided no evidence that the State engaged in any such actions here.

As for Lively's mental state at the time of his plea, he provided no evidence that his depressive disorder or any other mental illness interfered with his ability to understand the plea agreement, and the statements of his standby counsel during the plea hearing, summarized above, refute that claim. *See Arista v. State*, 2 S.W.3d 444, 446 (Tex. App.—San Antonio 1999, no pet.) (concluding that evidence of defendant's mental illness did not overcome presumption that his plea was voluntary because "[a]lthough Arista apparently suffered from a mental disease or defect, there is no indication that it affected his ability to communicate with counsel or understand the proceedings against him").

Additionally, Lively's former appointed counsel, Cathy Compton, who was the primary focus of Lively's claim that he had received ineffective assistance of counsel, submitted an affidavit in which she averred that she has "represented many clients with mental health challenges, including numerous veterans," but that she found Lively "to be a duplicitous and

11

manipulative individual with a grandiose sense of entitlement," who "often and intentionally used his mental health history as an excuse to indulge in otherwise unacceptable behaviors." Compton added that "[m]uch of Mr. Lively's alleged mental health history was self-reported to me or contained in documents from family or friends rather than healthcare providers," with the exception of the letter from the psychologist noted above. *See supra* n.5. Compton further averred:

> Additionally, at no time during my dealings with Mr. Lively did I ever have any concerns about his competency or ability to understand the nature of the proceedings that he was charged with or what was going on in his cases. He seemed able to function with no problem in his day-to-day life and to communicate effectively when he chose to do so. He provided me with numerous certifications for classes he had taken either shortly before or during my representation, something that showed he was quite capable of understanding complex concepts and functioning under pressure. From what I observed, it seemed that his mental health episodes only manifested when things were not going to his liking in any given situation. Mr. Lively seemed very intelligent and certainly aware of everything that was going on in his cases.

The district court found Compton's testimony to be credible, and we are to defer to that determination. This evidence, combined with the statements of standby counsel at the plea hearing, the statements in the plea documents signed by Lively and standby counsel, and the district court's personal observations of Lively's answers and demeanor during the plea hearing and "many other hearings where [Lively] appeared," support the district court's findings that Lively's plea "was freely, knowingly, intelligently and voluntarily made" and that Lively "was competent during any previous hearings and during his plea proceedings."

We conclude that the record supports the district court's finding that Lively made his plea knowingly, intelligently, and voluntarily with sufficient awareness of the relevant

12

circumstances and likely consequences of his plea. Accordingly, we cannot conclude that the district court abused its discretion in denying the habeas application on that basis.[6]

We overrule Lively's second issue.[7]

**Ineffective assistance of counsel**

In his third issue, Lively raises complaints regarding the effectiveness of both his first appointed counsel (Cathy Compton) and his second appointed counsel (Edwin Matias), who both withdrew from representing Lively three and two years, respectively, before he pled guilty while representing himself pro se. In his habeas application, Lively asserted that Compton and Matias: (1) "failed to pursue *Brady* evidence that had not been provided to the defense"; (2) "failed to secure an expert witness given the technical nature of the evidence to be used by the Comal County District Attorney (Cell Phone Location Records)"; and (3) "failed to secure an expert witness given [Lively's] well known and documented mental health diagnosis." Lively additionally asserted that Matias: (4) "failed to question a single witness in order to provide a defense against the charges"; and (5) "failed to pursue a speedy trial as directed by [Lively]."

---

[6] For the first time on appeal, Lively asserts that he did not make his plea knowingly because the district court did not disclose the "actual punishment" or "maximum punishment" if Lively "fails to complete his Deferred Adjudication period of 10 years and comply with the remaining conditions of his Deferred Adjudication Judgment." Lively failed to preserve this complaint in the court below. *See* Tex. R. App. P. 33.1(a)(1). Additionally, the record reflects that the district court informed Lively during the plea hearing that if he did not comply with all the conditions of community supervision, the State could file a motion to adjudicate and the district court could revoke his probation and "sentence [him] to any term of time that that particular offense carries," which the plea paperwork stated as "Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years; in addition, a fine not to exceed $10,000."

[7] Lively further asserts in his second issue that his guilty plea was involuntary because of ineffective assistance of counsel and because the State withheld evidence from him. His discussion of those contentions is presented in his third and fourth issues, respectively, which we address below.

"The constitutional right to effective assistance of counsel extends to the plea-bargaining context, where it is subject to the two-part test of *Strickland v. Washington*." *Masterson v. State*, 706 S.W.3d 468, 473 (Tex. App.—Austin 2024, no pet.) (citing *Missouri v. Frye*, 566 U.S. 134, 138, 140, 144 (2012)). "Under that test, for a complaint of ineffective assistance of counsel to succeed, a defendant must show both (1) deficient performance and (2) prejudice." *Id.* (citing *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018)). "Failing to make either showing defeats the complaint." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 670 (1984)). "Both showings must be made by a preponderance of the evidence." *Id.* (citing *Chuong Duong Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). "Whether each respective showing has been made is a mixed question of law and fact." *Id.* (citing *Strickland*, 466 U.S. at 698).

"To show deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and when considering all the circumstances." *Id.* (citing *Strickland*, 466 U.S. at 687-88). This requires showing "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "There is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689). "Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight." *Id.*

14

To show prejudice, a defendant must prove by a preponderance of the evidence "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In a challenge to a guilty plea, the focus is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Ex parte Ali*, 368 S.W.3d at 833.

<u>Failure to pursue *Brady* evidence</u>

Lively first argues that Compton and Matias failed to pursue *Brady* evidence. However, the record contains emails between Compton and the State showing her attempting to obtain a 911 recording that Lively believed to be *Brady* evidence, and as we discuss in more detail below, the prosecutor informed the district court that to the extent the State was able to do so, it had provided the discovery that Lively had requested through Compton. Additionally, Compton averred that at the time she withdrew as Lively's counsel, she was "still preparing for trial, still attempting to negotiate with the District Attorney's Office, and working on making sure we had all the evidence we had requested." The district court would not have abused its discretion in crediting Compton's testimony and concluding that Compton was pursuing *Brady* evidence during the time that she represented Lively. Regarding Matias, the record is silent regarding the specific discovery that he did or did not seek, and the district court would not have abused its discretion in failing to find deficient performance in the face of a silent record.

15

Additionally, as we explain in more detail below, Lively failed to demonstrate that the alleged *Brady* evidence was material to the case or that the State's failure to disclose it harmed him. Thus, the district court would not have abused its discretion in concluding that Lively failed to demonstrate prejudice from counsel's alleged failure to pursue the evidence.

### Failure to secure an expert witness on cell-phone location data

Lively also asserts that Compton and Matias should have obtained an expert witness to counter the anticipated testimony of the State's expert witness on cell-phone location data, which the State was planning to use at trial to prove that Lively had violated the protective order that his wife had obtained against him. However, counsel could have concluded that it would have been more effective to cross-examine the State's witness than to call a separate defense witness. As Compton explained in her affidavit:

> Mr. Lively alleges that I was ineffective because I did not obtain an expert to assist in his trial with the cell phone location records that he anticipated the prosecution planned to use at trial. This assumes I did not understand the records or that I would have been unable to effectively cross-examine any witnesses the state provided at trial. This is not true. I have conducted both direct and cross-examination of witnesses regarding cell phone location records previously. I did not feel that an expert was necessary at that point. If Mr. Lively believed he needed an expert witness to explain cell phone location records in his favor at trial, he could have engaged an expert at any time prior to the trial he ultimately chose not to have.

Additionally, there is no evidence of the testimony that an expert witness for the defense would have provided. Consequently, Lively has failed to demonstrate that there is a reasonable probability that but for counsel's failure to secure an expert witness, Lively would not have pleaded guilty and would have insisted on going to trial.

16

<u>Failure to secure an expert witness on mental health</u>

Lively next argues that Compton and Matias "failed to secure an expert witness given [Lively's] well known and documented mental health diagnosis." The district court would not have abused its discretion in concluding that neither attorney was deficient in this regard. As mentioned above, Compton averred that she found Lively to be "duplicitous and manipulative" and believed that he "intentionally used his mental health history to indulge in otherwise unacceptable behaviors." Thus, Compton was "worried [Lively] would be found to have some level of malingering," and for that reason, she "chose not to have an additional independent examination of Mr. Lively by a forensic psychologist in his cases." Compton also explained that much of Lively's mental-health history was self-reported or contained in documents from family or friends rather than healthcare providers, other than the psychologist who had diagnosed Lively with major depressive disorder. She "likely would have subpoenaed" that psychologist for trial, but she withdrew as counsel before any subpoenas were requested by either side. Compton added that "[h]ad Mr. Lively wished to obtain mental health experts for his trial he had ample opportunity to do so in the intervening two years or more after my withdrawal from his cases." On this record, the district court would not have abused its discretion in concluding that Compton did not perform deficiently during her representation of Lively.

As for Matias, it appears that he attempted to investigate Lively's mental-health history but that Lively failed to cooperate. In Matias's affidavit, he averred that he asked Lively "to bring the VA records he claimed to possess concerning his claimed PTSD" to an in-person meeting with Matias but that Lively "failed to produce any such medical or counseling records during our meeting and claimed he simply forgot." The district court would not have abused its discretion in crediting this testimony and concluding that because Lively failed to produce the

medical records that Matias requested, Matias was not deficient in failing to secure an expert witness regarding Lively's mental health.

Additionally, Lively produced no evidence demonstrating that an expert witness on his mental health would have provided testimony that was favorable to Lively or would help his case in any way. Accordingly, Lively failed to establish that but for Compton's or Matias's alleged failure to secure an expert witness on his mental health, Lively would not have pleaded guilty and would have insisted on going to trial.

Failure to investigate the case and question witnesses

Lively also asserts that Matias failed to investigate the case and interview witnesses, specifically Lively's mother, brother, and father. According to Lively, all three witnesses were willing and prepared to testify that Lively did not violate the protective order as alleged by the State. As an initial matter, we observe that other than Lively's assertion that Matias failed to do so, the record is silent as to whether Matias failed to interview these or other witnesses during the time that he represented Lively. The district court found that Lively's "vague, conclusory allegations" were "unsupported by credible, specific evidence," and we are to defer to the district court's credibility determination. Moreover, assuming without deciding that Matias's investigation of the case was deficient, we cannot conclude on this record that there is a reasonable probability that but for counsel's deficient performance, Lively would not have pleaded guilty and would have insisted on going to trial. Matias withdrew as counsel for Lively in September 2020, and Lively chose to represent himself after that. Lively did not plead guilty until November 2022, and the district court would not have abused its discretion in finding that in the over two years between Matias's withdrawal and Lively's guilty plea, Lively could have

18

interviewed his family members himself and called them as witnesses if he had wanted to go to trial, but he chose instead to plead guilty.

### Failure to pursue a speedy trial as directed by Lively

Finally, Lively complains that Matias failed to pursue a speedy trial during the period that he represented Lively. The record is silent as to the reasons why Matias did not pursue a speedy trial, and "[a]bsent a record that elucidates trial counsel's strategy," we cannot conclude that Matias's decision to not pursue a speedy trial falls outside the wide range of reasonable professional assistance. *See Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Additionally, the record reflects that during a docket call in February 2020, Matias announced that he had obtained an agreement with the State to keep the case on a "pretrial setting" because he was "new to the case as the prior lawyer withdrew." This supports a finding that Matias needed more time to investigate the case and might not have pursued a speedy trial for that reason. *See Crocker v. State*, 441 S.W.3d 306, 313-14 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (noting that possible strategy in not pursuing speedy trial is to obtain more time to prepare for trial). Finally, we observe that Matias was appointed to represent Lively in August 2019, and his appointment ended in late September 2020. According to the State, because of the COVID-19 state of disaster, "no criminal jury trials were held in Comal County from around the week after May 9, 2020 until on or about October 4, 2021." We cannot conclude that Matias was deficient for failing to pursue a speedy trial during that time.

In sum, the record supports the district court's finding that Lively "has not established any credible grounds in support of deficient performance, prejudice, nor any other

right to relief" based on ineffective assistance of counsel. Accordingly, we cannot conclude that the district court abused its discretion in denying the habeas application on that basis.

We overrule Lively's third issue.

**Failure to disclose evidence**

In his fourth issue, Lively asserts that the State withheld evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and the Michael Morton Act, Texas Code of Crim. Proc. 39.14(h). Specifically, he complains of the State's alleged failure to disclose (1) an investigative report by a detective who interviewed Lively's wife after Lively had reported to the police that his wife had been harassing him; (2) an audio recording of a 911 call from January 2018 in which Lively reported that his wife had attacked him; (3) a statement made by Lively's wife to the prosecutor recanting her allegations against Lively; (4) extracted data from a cell phone belonging to Lively's wife; (5) personnel files from two officers who investigated the case; (6) personnel files from the detective responsible for the forensic analysis of the location data on Lively's cell phone; and (7) personnel files of the arresting officer, who had been convicted of driving while intoxicated and was no longer employed by Comal County.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To find reversible error under *Brady* and its progeny, a defendant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the

outcome of the proceeding would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). To the extent that *Brady* applies to plea proceedings,[8] the test for materiality is whether there is a reasonable probability that but for the State's failure to disclose the evidence, the defendant would not have pleaded guilty but would have insisted on going to trial. *See Pitman v. State*, 372 S.W.3d 261, 272 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Tate v. Wood*, 963 F.2d 20, 24 (2nd Cir. 1992)). Under this test, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the proceeding would have been different had the prosecutor made a timely disclosure. *See Hampton*, 86 S.W.3d at 612. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the [proceeding], does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

The State's discovery obligations are more expansive under the Michael Morton Act, which provides, among other requirements, that "the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." Tex. Code Crim. Proc. art. 39.14(h). The State's duty of disclosure under this provision "is much broader than the prosecutor's duty to disclose as a matter of due process under *Brady vs. Maryland*." *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). It creates "an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not 'material,'"

---

[8] The Court of Criminal Appeals has held that "[w]hether the right to *Brady* information extends to the pretrial stage of prosecution, however, is still an open question." *Ex parte Palmberg*, 491 S.W.3d 804, 814 (Tex. Crim. App. 2016).

and it "requires disclosure of evidence that merely 'tends' to negate guilt or mitigate punishment." *Id.* However, alleged violations of Article 39.14 are still subject to a harm analysis, *see id.* at 291, and because the State's duties under the Michael Morton Act are statutory in nature, any violation of the Act "must be disregarded" unless it affects a defendant's "substantial rights," Tex. R. App. P. 44.2(b).

In this case, the State disputed Lively's assertion that it had failed to disclose evidence. At a pretrial hearing in May 2021, over a year before Lively pleaded guilty, the State informed the district court that at the conclusion of the hearing, it would provide the district court with the personnel files of the investigating officers that Lively had requested so that the court could conduct an in camera inspection of the files prior to disclosure. Later during that hearing, Lively asked one of the prosecutors to "go on the record" and "state that she doesn't have any *Brady* material" that she had failed to disclose. The prosecutor responded as follows:

> And, Judge, we have made available all material. I certainly don't believe that I am in possession of any *Brady* material at this point in time.
>
> I will tell the Court that one of the deputies involved in the aggravated assault investigation, Deputy Solis, no longer works for the Comal County Sheriff's Office, and he has a criminal conviction for driving while intoxicated. And that is included in his personnel file that will be provided to the Court.
>
> However, part of the problem with this case is that Mr. Lively has continued to in as—in essence, create his own *Brady* material. He's contacted law enforcement to make what law enforcement has deemed to be frivolous reports of harassment against the complaining witness in our pending cases. He's essentially e-mailed multiple-page rants to law enforcement agencies as well as [the District Attorney] and her family members.
>
> We've done the best we can to kind of collect and include those in the discovery, but, frankly, at this point, Mr. Lively has no idea what the State has or has not provided because he hasn't come to look at the discovery. And he's not entitled to a specific list of the weaknesses as I perceive them for his case.

So the information that is available in discovery absolutely could include some *Brady* material, but I'm not – I'm not obligated to make a list and provide that to him in a different format. I just have to make it available for him and provide notice to him.

We have that available. It has been noticed. It is available for him to come and look through. And I will make every effort, if there is additional material that he feels has not been included—I will do my due diligence to try to obtain that information if it's available.

. . . .

The district court told Lively that it was "satisfied with [the prosecutor's] explanation with regards to this" and that "as far as discovery is concerned, these items are available to you." Lively responded, "And I would like to note that I am in Tennessee, and it is a hardship for me to travel to Texas for viewing these materials. [Article] 39.14(h) [of the Michael Morton Act] does not require me to come to Texas to view these materials. It requires the district attorney to disclose it. It's very plain and simple." The district court replied, "Mr. Lively, neither is the district attorney's office responsible for you being in Tennessee. I'm sorry, but that's just the way it works." Standby counsel then interjected:

And, Judge, just—just for the record, I have reviewed the discovery. I don't see anything that I would classify as *Brady* material. I mean, there is discovery, I think, that—that is being made available. I've reviewed it. I'm not seeing anything that I would classify as *Brady*, with perhaps the exception of what Miss—what the district attorney said today about the possible DWI on the—on the one officer. But other than that, I'm not seeing anything that I would classify as *Brady* material.

Lively mentioned that there was "a non-prosecution affidavit by my wife claiming that she did—that I did not commit this crime." The prosecutor responded, "And that is part of the discovery that's been provided to previous defense counsels. It is included in what was provided to

23

[standby counsel], and it is included in the discovery for the case, which is available for Mr. Lively to review." The district court would not have abused its discretion in crediting the statements of the prosecutor and standby counsel and in concluding that the State did not fail to disclose the evidence that Lively claims the State withheld.

Moreover, we cannot conclude on this record that the evidence Lively claims the State withheld was material for purposes of *Brady* or that the failure to disclose that evidence harmed Lively for purposes of the Michael Morton Act. The record reflects that before Lively pleaded guilty, he was already aware of his wife's recantation and Deputy Solis's conviction for DWI. Thus, the State's failure to disclose that evidence would not have influenced his decision to plead guilty or affected Lively's substantial rights. Similarly, the 911 call from January 2018, the statements that Lively's wife made to a detective in the investigation of that call, and the location data from his wife's cell phone involved Lively's allegations against his wife's actions rather than the offense that Lively allegedly committed. Accordingly, any failure by the State to disclose that evidence would not have been material or affected Lively's substantial rights. Finally, we cannot conclude on this record that any failure of the State to disclose information in the personnel files of the investigating officers was material or affected Lively's substantial rights. For these reasons, we cannot conclude that the district court abused its discretion by denying the habeas application on the ground that the State failed to disclose evidence.

We overrule Lively's fourth issue.

**Speedy trial**

Lively was arrested for the offense of continuous violation of a protective order in June 2017. Lively pleaded guilty to the offense in November 2022. In his fifth issue, Lively asserts that the delay of over five years violated his constitutional right to a speedy trial.

To determine whether a defendant was denied his right to a speedy trial, we consider the four non-exhaustive factors listed by the United States Supreme Court in *Barker v. Wingo*: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *State v. Uhl*, 717 S.W.3d 117, 128 (Tex. App.—Austin 2025, pet. ref'd) (citing *Barker*, 407 U.S. 514, 530 (1972)). "The trial court 'must use a balancing test in which the conduct of both the State and the defendant are weighed' in order to analyze such claims." *State v. Gabaldon*, ___ S.W.3d ___, 2025 WL 2588858, at *8 (Tex. Crim. App. 2025) (citing *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003)). "No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial." *Shaw*, 117 S.W.3d at 889. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

"We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components." *State v. Lopez*, 631 S.W.3d 107, 113-14 (Tex. Crim. App. 2021). Thus, we review all evidence in the light most favorable to the trial court's ultimate ruling, and we conduct the balancing test, which is a legal question, de novo. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Length of delay

"The length of delay, also called a 'double inquiry,' is the prima facie 'triggering mechanism' that begins the *Barker* analysis." *Gabaldon*, 2025 WL 2588858, at *8 (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). "Although every case should be examined under an ad hoc basis, '[i]n general, delay approaching one year is sufficient to trigger a speedy trial inquiry.'" *Id.* The delay in this case was over five years. This weighs heavily against the State. *See Barker*, 407 U.S. at 533 (describing delay of "well over five years" as "extraordinary"); *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2017) (stating that delay of "more than eight years" was "sufficient to trigger the *Barker* inquiry" and that because delay "stretched far beyond the minimum needed to trigger the inquiry," factor weighed heavily in favor of finding violation of speedy-trial right); *Laird v. State*, 691 S.W.3d 30, 38 (Tex. App.—Austin 2023, pet. ref'd) (delay of approximately five-and-a-half years sufficient).

Reasons for delay

The Supreme Court in *Barker* listed three categories of delay that a reviewing court must weigh when conducting a speedy-trial analysis and explained the weight that should be given to each category. *Uhl*, 717 S.W.3d at 129 (citing *Barker*, 407 U.S. at 531). First, a deliberate attempt to "hamper the defense" weighs heavily against the State. *Id.*; *see Balderas*, 517 S.W.3d at 768. Second, neutral reasons, "such as negligence or overcrowded courts," weigh less heavily but must still be considered "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. Finally, valid reasons, such as a missing witness, "should serve to justify appropriate delay," *id.*, and do not count toward the length of delay, *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App.

26

2014). Additionally, delay caused by the defendant or his counsel weighs against the defendant. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017) (citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)); *Balderas*, 517 S.W.3d at 768. If the record does not provide a reason for a delay, a court may not presume that the delay was due to a "valid reason" or to the State's bad faith. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Here, there is no evidence in the record that the State made any deliberate attempt to hamper the defense or acted negligently in delaying the proceedings. The delay associated with the COVID-19 pandemic can fairly be attributed to the State, but only slightly. *See Uhl*, 717 S.W.3d at 132-33. There is also some evidence in the record that some of the delay after jury trials resumed in Comal County was attributable to the backlog following the pandemic, which also weighs slightly against the State. *See Shaw*, 117 S.W.3d at 890.

However, the majority of the delay is attributable to Lively and his various counsel. First, Defendant hired retained counsel, who filed a Notice of Appearance on or about December 6, 2017, but then filed an unopposed motion to withdraw on or about January 9, 2018, noting that Lively desired to dismiss his firm. Lively then filed an Affidavit of Indigence at the January 30, 2018 hearing, which resulted in the appointment of Compton as counsel and a reset of the case by the district court. Then, at a hearing on March 6, 2018, Compton informed the court that "I was recently substituted in on that case and I'd like another pretrial for discovery. I would also ask if I can have a longer reset than we normally give. [Lively] lives out of state," to which the Court replied "Sure…. Just tell [a court coordinator] whatever time you need." At a subsequent pretrial setting on September 25, 2018, Compton indicated that she needed to confer with the State, and that if the parties could not "figure something out, then I'll probably end up

27

moving that to a … jury setting." Compton obtained another reset in December 2018, this one for 60 days.

In July 2019, Compton filed a motion to withdraw, citing a conflict that had arisen with Lively. The district court granted the motion, and appointed Matias as counsel for Lively in August 2019. Then, in February 2020, Matias announced that the parties "have an agreement to keep [the case] on the pretrial setting," and the trial court granted counsel's request for another reset. On March 13, 2020, a state of disaster was declared regarding the COVID-19 pandemic and no criminal jury trials were held in Comal County from May 2020 until October 2021. During that time, in August 2020, Matias filed a motion to withdraw, again because of a conflict with Lively.

In November 2020, the district court ordered the case file sealed with the District Clerk but available for review by Lively in person. Shortly thereafter, Lively filed a federal lawsuit challenging the scope of discovery, and that suit was not dismissed until June 2021. In January 2021, Lively filed a motion for standby counsel, which the district court granted. In March 2021, at a "jury status" hearing, Lively announced that he had filed additional motions with the court, specifically for the appointment of an expert witness, and that those motions needed to be heard. Then, at another pretrial hearing in May 2021 (summarized above in our discussion of the *Brady* issue), Lively continued to challenge the discovery that the State had provided to him, announced that he had filed another motion for discovery, and argued that he should not be required to travel from Tennessee to Texas to view the discovery.

In August 2021, Lively filed a petition for writ of mandamus in this Court, seeking that this Court order the trial court to provide him "direct access" to the grand jury. This Court denied relief in September 2021, and after that, Lively filed a similar petition in the Texas

28

Supreme Court, which that court denied in October 2021. In January 2022, Lively filed a motion for speedy trial and, in February 2022, a motion to set aside the indictment. Then, in May 2022, Lively filed a motion for a *Daubert/Robinson* hearing and, at another pretrial hearing, continued to challenge the scope of discovery and argue for dismissal. Finally, in November 2022, Lively pleaded guilty.

In sum, the record amply demonstrates that Lively and his attorneys were responsible for most of the delay in this case. We conclude that this factor weighs heavily against Lively.

Assertion of right

The record reflects that Lively asserted his right to a speedy trial on multiple occasions beginning in April 2020, over two years after he had been charged with the offense, but he also filed a motion to set aside the indictment for failure to provide a speedy trial and sought dismissal of the charge. Lively's delay in seeking a speedy trial, combined with Lively's effort to dismiss the charge, weakens Lively's claim that he wanted a speedy trial. *See Gabaldon*, 2025 WL 2588858, at *11; *Cantu*, 253 S.W.3d at 283. This factor weighs in Lively's favor, but only slightly.

Prejudice to the defendant

The United States Supreme Court has identified three interests of the defendant that the speedy-trial right was meant to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Laird*, 691 S.W.3d at 42-43. The most serious is the last, including the unavailability of witnesses or loss of memory, because "the

29

inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Uhl*, 717 S.W.3d at 139 (quoting *Barker*, 407 U.S. at 532). A defendant "has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Balderas*, 517 S.W.3d at 772. "Evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Sample v. State*, 653 S.W.3d 287, 292 (Tex. App.—Austin 2022, pet. ref'd) (citing *Cantu*, 253 S.W.3d at 286).

Here, the record reflects that Lively was released on bond the same day that he was arrested for the offense, and he remained free on bond for the entirety of the case. For that reason, Lively concedes that he suffered no oppressive pretrial incarceration. Lively also offered no evidence of any particular anxiety or concern "beyond the level normally associated with being charged with" a criminal offense.[9] *See Shaw*, 117 S.W.3d at 890. Lively argues that his defense was impaired by the delay but offers minimal evidence of this. He asserts that his 74- and 72-year-old parents, who he claims were witnesses to the offense, "have expressed concern over failing memories of the events." However, Lively provided no evidence of what, if anything, they may have forgotten, and a "bare assertion" of "dimming memories" is insufficient to show an impairment to the defense. *Munoz*, 991 S.W.2d at 829. Lively also points to a family friend who he asserts would have provided testimony favorable to Lively but who died in December 2019. However, that was before Lively asserted his right to a speedy trial and while he was seeking resets in the case and experiencing conflicts with his attorneys that resulted in

---

[9] Lively points to his mental-health issues as evidence of his anxiety, but these issues appear to have predated the case or occurred early on in the case, and Lively provided no evidence that these issues were exacerbated by the delay in the case rather than the charges themselves.

their withdrawal. Thus, to the extent the loss of that witness impaired his defense, that loss was not attributable to the State. We conclude that this factor weighs heavily against Lively.

Balancing the factors

In sum, the length of the delay weighs heavily against the State; the reasons for the delay weigh heavily against Lively; Lively's assertion of his right to a speedy trial weighs in his favor, but only slightly; and the prejudice factor weighs heavily against Lively. We conclude that the balance of the factors in this case weighs against Lively. Thus, the district court would not have abused its discretion in concluding that Lively's right to a speedy trial was not violated and in denying the habeas application on that basis.

We overrule Lively's fifth issue.

**Actual innocence**

In his sixth issue, Lively asserts that he is actually innocent of the offense of continuous violation of a protective order. "Claims of actual innocence are categorized either as *Herrera*-type claims or *Schlup*-type claims." *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002) (citing *Herrera v. Collins*, 506 U.S. 390 (1993); *Schlup v. Delo*, 513 U.S. 298 (1995)). "A *Herrera*-type claim involves a substantive claim in which applicant asserts his bare claim of innocence based solely on newly discovered evidence." *Id.* "A *Schlup*-type claim, on the other hand, is a procedural claim in which applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error at trial," such as a *Strickland* or *Brady* violation. *Id.*

Here, Lively's claim is not based on any newly discovered evidence. Instead, Lively argues that he pleaded guilty not because he was guilty but because his constitutional

rights were violated for the reasons discussed above in his other issues. As we explained when addressing those issues, Lively failed to establish that any violation of his constitutional rights occurred. Accordingly, we cannot conclude on this record that the district court abused its discretion in denying Lively's habeas application on the ground of actual innocence.

We overrule Lively's sixth issue.[10]

## CONCLUSION

We affirm the district court's order denying Lively's application for writ of habeas corpus.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: November 7, 2025

Do Not Publish

---

[10] To the extent that Lively also argues in this issue that the evidence is insufficient to support his conviction, a challenge to the sufficiency of the evidence is not cognizable on an application for a post-conviction writ of habeas corpus. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Moreover, even if it were cognizable, it is well established that a judicial confession, standing alone, is sufficient evidence to sustain a conviction upon a guilty plea when it addresses each essential element of the crime. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009); *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1980); *Staggs v. State*, 314 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Lively's judicial confession satisfies that requirement.